THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. LOU HOLLAND.

**No. 9981.**

1. MOTION FOR NEW TRIAL—*and motion for judgment on findings notwithstanding verdict may be filed at same time.* A motion for judgment on special findings notwithstanding the general verdict, and one for a new trial, may be filed by the defendant at the same time; and the submission and decision of the former motion will not operate as a waiver of the latter.

2. ———— *should be granted where findings show case not fairly and intelligently tried.* Where special findings upon a material issue are contrary to the evidence and inconsisent with each other, indicating that the jury did not fairly and intelligently consider the case, the general verdict should be set aside and a new trial granted.

Error from Cowley District Court. Hon. A. M. Jackson, Judge. Opinion filed June 5, 1897. *Reversed.*

*A. A. Hurd* and *M. G. Troup*, for plaintiff in error.

*Madden & Buckman*, for defendant in error.

JOHNSTON, J. Lou Holland was struck and seriously injured by a passenger train of the Atchison, Topeka & Santa Fe Railroad Company at a crossing near the station of Hackney, and she seeks to recover damages for the injuries sustained. Hackney is a hamlet consisting of a church, a store, a station-house and a few residences. At that point, the railroad runs in a southwesterly direction, while the wagon track runs

north and south and crosses the railroad track about 250 yards south of the station-house. The country in the vicinity of Hackney is nearly level, but the grade of the railroad slightly descends to the south. There is a curve in the railroad about 275 yards north of the station-house, leaving an unobstructed view of the track for about 525 yards north of the crossing. The station-house is west of the railroad track and between it and the wagon road. Above the crossing, and where the highway nears the station-house, the wagon track angles toward the railroad, and they come together at a point about forty rods north of the crossing. From that point the wagon track parallels the railroad to the crossing, the two tracks being only from five to eight feet apart. At the crossing, the highway turns somewhat abruptly to the east over the railroad track.

For many years Lou Holland had lived near the railroad track and about a half a mile south of the crossing. On the day of the injury, she went to Winfield in a buggy to which was hitched a single horse, and on the evening of that day started south on her way home. As she approached Hackney she was aware that a train was past due, and she states that she kept a lookout for it. She says that she looked several times before angling over to the railroad, and also while driving close to, and parallel with, the railroad track for a distance of about forty yards to the crossing, but did not see or hear a coming train. While paralleling the track, her back was toward the coming train; and when she turned upon the track, and had passed nearly over it, the locomotive struck the hind wheel of her buggy, throwing her out and causing the injuries complained of. In her petition, she charges that the Railroad Company was negligent in failing to sound the whistle eighty rods from the

crossing; and alleges that the employees of the Company, operating the train, "failed and neglected to sound the whistle or ring the bell or otherwise warn this plaintiff of the approach of said train, and, without slacking the speed thereof, carelessly, negligently and wantonly ran into and against the plaintiff and her buggy, causing the injuries above set forth." The speed of the train is alleged to have been at a rate of from thirty-five to fifty miles an hour.

A general verdict awarding to plaintiff below $6,300 as damages was returned by the jury, and with it a number of special findings. The Company at once filed a motion asking judgment on the special findings notwithstanding the general verdict, and upon the same day filed a motion for a new trial. Six days afterward, the motion for judgment on the special findings was considered and overruled; and immediately thereafter the motion for a new trial was refused.

It is contended that the two motions are inconsistent, and that the filing of the first, operated as a waiver of the motion for a new trial. We think no such consequence follows the filing of the two motions. Each is an attack on the general verdict, and, if it is not set aside upon the first motion and judgment given on the special findings, the court is asked upon the second motion to set it aside and grant a new trial.

1. Motions for new trial and judgment filed, when.

Probably, a written motion for judgment on the findings is not essential. When inconsistent with the general verdict they control, and it is the duty of the court, with or without formal application, to give judgment accordingly. Civil Code, § 288. If such a motion is filed and the decision thereon is not promptly given, a party cannot safely defer his motion for a new trial. If the findings settle the case, a new trial

should not be asked for or allowed; and if the court fails to reach a conclusion upon the first motion, or for any reason postpones its decision beyond three days after the verdict is returned, no opportunity is given to obtain a new trial. The pendency of a motion for judgment on the findings affords no excuse for a delay in filing the motion for a new trial more than three days after the rendition of the verdict. A motion filed after that time is a nullity. *City of Osborne v. Hamilton*, 29 Kan. 1. We think the two motions may be pending at the same time, and that the motion for a new trial is not waived by a motion for judgment on the special findings notwithstanding the general verdict. *Luse v. U. P. Rly. Co.*, 57 Kan. 361; 46 Pac. Rep. 768; 16 Am. & Eng. Encyc. of Law, 636; Elliott's General Practice, § 995.

It is contended that the jury did not give the case a fair and intelligent consideration, and that this appears from the inconsistency of the special findings with each other and with the general verdict. There is a further contention that the verdict is without support, and that several important findings are contrary to the testimony. The failure to give the statutory signals as the train approached the crossing where the injury occurred, is chiefly relied on as a ground of negligence. The locomotive whistle was sounded for the station a short distance north of the post designating where the whistle should be sounded for the crossing. While those in charge of the train testified that they also sounded the whistle for the crossing, there is testimony tending to show that they did not; and therefore there was evidence from which an inference of negligence might be drawn by the jury. The Company claims that the injury resulted from the contributory negligence of the plaintiff below, and there is considerable in the evidence

2. New trial granted, when.

tending to sustain the claim.   The care exercised by her before and at the time of the injury, was, therefore, an important consideration for the jury ; and upon this question their findings cannot be reconciled with the testimony or with each other.

She testified that she repeatedly looked and listened for the train as she approached, but did not see or hear it until she was upon the crossing.   She states that she was aware that a train was due, and that she had looked for it several times before she reached that portion of the highway which runs parallel with the railroad.   In going across to that part of the highway, the depot obstructed her view for a moment ; but she states that when she reached that point, and started southwest along, and within from five to eight feet of, the railroad track, her view was unobstructed.   Although she testified that she could then see past the depot and up the track, the jury answered that her view was obstructed by the depot. In answer to the eighth question, as to whether she could see an approaching train as she was about to cross the railroad, they responded : "No; the depot obstructed the view."   In answer to the thirteenth, they said that she could have seen an approaching train, just prior to the time she attempted to cross the track, if there had been no obstruction.   In answer to the fifteenth, they stated that the depot prevented the plaintiff from seeing an approaching train if she had looked for it just prior to driving on the crossing.   Although the jury found that her view was obstructed so that she could not see the approaching train, there is a finding that those in charge of the train could see her for a considerable distance before reaching the crossing.   In answer to the twenty-fourth question, it is stated that the plaintiff could

not obtain a fair view of the train as she was approaching the crossing, without stopping her vehicle for that purpose ; while she stated that she did look, and did obtain a view, and saw no train approaching. How she could be within the view of the men on the train and at the same time the train not be within her view, is not explained ; and it was absurd to say that she could not get a fair view of the track without stopping her vehicle. The motion and noise of her buggy might have interfered with her hearing the train, but certainly could not have prevented her from obtaining a view along the track.

Whether she exercised due care for her own safety just before attempting to cross the track, was an issue in the case and a matter of consequence. The plainest dictates of prudence and a sensible regard for her own safety required that, before attempting to cross, she should look and listen for the approach of the train, and take all reasonable precautions to avoid danger. As the trial court instructed the jury : " If the view of the track was partially obstructed, whereby she was unable to see an approaching train, then greater care was required on her part than would be if she had an open and extended view of the track." She was bound to know that a railroad crossing is a dangerous place, and was guilty of negligence unless she approached it as if it were dangerous. If she went upon the track without exercising ordinary care and taking reasonable precautions for her own safety, she was guilty of contributory negligence and cannot recover. The findings of the jury are to the effect that she could have seen the approaching train if there had been no obstruction ; and yet the plaintiff herself says that, for a distance of from 100 to 150 feet before reaching the crossing, her view was not obstructed. It is ob-

vious that the jury disregarded the testimony, and the findings indicate that the questions submitted were not fairly considered and determined.

In other respects the findings show that the jury were heedless and inconsiderate. In her testimony, the plaintiff states that she was driving at the rate of from six to seven miles an hour when she approached the crossing, but the jury answer that she was only going about four miles an hour. In answer to the question if the employees of the Company intentionally and wantonly drove the train upon and against the buggy in which she was riding, they say : "Yes, through neglect of duty." The petition alleged that the train was traveling at from thirty-five to fifty miles an hour. One witness stated that it was running more rapidly than usual, and another, that it was "running like the devil." The only witness who attempted to give the speed with any definiteness testified that it was running thirty-five or forty miles an hour. Notwithstanding this testimony, and although the plaintiff below did not claim that the speed was greater than fifty miles an hour, the jury found that the train was traveling at the rate of sixty miles an hour.

Objections are made to rulings upon the testimony, but we find nothing substantial in them ; nor do we see any reason for criticising the instructions, unless it is the one charging the jury upon the subject of gross and wanton negligence. It is doubtful if there is anything in the testimony warranting the giving of such an instruction.

It is insisted that the testimony of the plaintiff below clearly demonstrated that she was guilty of contributory negligence, and therefore the demurrer to her evidence should have been sustained or a verdict directed in favor of the Company. There is sufficient

proof of the negligence of the Company, and in view of the great speed at which the train was running, and the testimony of the plaintiff herself as to the care she exercised, it cannot be said as a matter of law that she was guilty of such contributory negligence as will bar a recovery. As some of the findings, however, are contrary to the evidence upon a material issue in the case and are inconsistent with each other, we think that a fair trial of the case has not been had ; and therefore the judgment will be reversed and the cause remanded for a new trial.