No. 34,521

LEE CRAIG et al. (LEE CRAIG, *Cross-appellant*), *Appellees*, v. FRED. STURGEON, *Appellant*.

(98 P. 2d 139)

Opinion filed January 27, 1940.

*P. E. Nulton* and *R. L. Letton*, both of Pittsburg, for the appellant.

*A. H. Carl*, of Pittsburg, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover damages for death by

wrongful act, and from an adverse judgment the defendant appeals. There is also a cross-appeal by the plaintiffs.

Briefly summarized, the petition alleged that on November 4, 1938, W. B. Craig was proceeding west on the north side of highway 160 about three and one-half miles west of Pittsburg, Kan., on his way home. He was driving a team and wagon, and a few minutes after six p. m. the wagon was struck in the rear by an automobile driven by the defendant, and as a result of the collision Craig received injuries which resulted in his death within a short time. The negligence charged was that defendant drove his automobile at a speed between seventy and eighty miles per hour, and without slackening his speed, sounding his horn or giving any signal, drove into the rear end of Craig's wagon; that had defendant kept a vigilant lookout he could and would have seen Craig's wagon "with a lighted lantern on the rear end at said time and place aforesaid for a distance of one thousand feet" and have so handled his automobile as to have avoided the collision. Other claimed negligence was failure to reduce speed and to turn to the left to avoid striking Craig's wagon.

Defendant's answer, after admitting Craig's death and that plaintiffs were his next of kin, denied generally, and alleged that Craig's death was not caused by any negligence of defendant, but was caused by the contributory negligence of Craig in driving his horse-drawn wagon along the highway after dark without having any light, lamp, lantern or other illuminating device on the wagon, in his failing to keep and maintain a lookout for vehicles approaching his wagon, and in failing to keep his wagon on the right-hand side of the road. It was further alleged that defendant was properly operating his car and that he was placed in a sudden emergency and that he acted and drove as a reasonably prudent person might drive in similar circumstances. It was also alleged that if the death of Craig was not caused by Craig's negligence, it was solely the result of an unavoidable accident for which defendant was not responsible.

At the trial defendant's demurrer to plaintiff's evidence was overruled, and later his motion for a directed verdict was denied. The jury returned a general verdict in favor of the plaintiffs for $3,000 and answered special questions submitted. Defendant's motions for a new trial, for judgment notwithstanding the verdict, and for judgment on the special findings and to set aside certain answers were each denied; plaintiffs' motion to set aside the answer to special

question No. 6 was allowed and will be referred to later, and their motion for a new trial was denied, and judgment was rendered in favor of Lee Craig for $1,750 and in favor of Osten Craig for $1,250. Defendant appeals, assigning as error the rulings on his demurrer and various motions and from the ruling striking out the answer to special question No. 6. The plaintiffs cross-appeal from the adverse ruling on their motion for a new trial.

We are of opinion that consideration of appellant's specification of error that judgment should have been rendered in his favor on the special findings will dispose of all questions raised on his appeal and on the cross-appeal of the appellee.

Nine special questions were submitted to the jury and answered by it. For present purposes it may be assumed that the answers to all questions except Nos. 4 and 6 were supported by the evidence and could be reconciled with the general verdict. As submitted to the jury, question No. 4 read:

"Did the wagon which W. B. Craig was driving have a lighted lantern on the rear thereof, which lantern displayed a red light visible for a distance of 500 feet to the rear of said wagon?"

The jury struck out the last clause of the question, so that it read: "Did the wagon which W. B. Craig was driving have a lighted lantern on the rear thereof?" And its answer to the question as thus altered was: "A lantern."

There was no dispute in the testimony that when the collision occurred it was dark enough that lights were required on vehicles using the highway. At the time of the collision it was required by G. S. 1937 Supp., 8-588, that all animal-drawn vehicles on the highway be equipped with a lamp or lantern exhibiting a red light visible from a distance of 500 feet to the rear, at any time from one-half hour after sunset to one-half hour before sunrise, and at any other time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of 500 feet ahead as provided in G. S. 1937 Supp., 8-581.

Apparently anticipating the defense, plaintiffs sought to show that the wagon of the deceased was so equipped and that he was not guilty of negligence for not having such a light, and they offered the testimony of three witnesses on that proposition. Hazel Greenwood testified that she lived about three-fourths of a mile east of the point of the collision; that W. B. Craig came to her place about six o'clock in the evening of November 4, 1938, and stayed about

twenty minutes, and just before he left he got a lantern which he had left at her place; that she lighted the lantern and he took it out and fastened it on the tailboard of his wagon. She was unable to state definitely what color of globe was on the lantern, but did say: "I imagine it was a white globe." She saw the lighted lantern on the back of his wagon as he drove away. About seven p. m. the ambulance went by and later she went to the scene of the collision, but she did not see the lantern there—"I never even thought about the lantern." We shall not detail any part of her examination tending to discredit any of the above. Sam Craig testified he was a brother of the deceased and lived in Pittsburg, and on hearing of the death of his brother went out to the home. On his way back he stopped at the scene of the collision and found a lantern about thirty feet from the wagon. He produced the lantern. It had a bent metal frame and no globe. Charles Mishmash testified he was with Sam Craig when the lantern was found and stated the lantern produced was similar to or the same one found at the scene. There is no evidence that the lantern produced was shown to Mrs. Greenwood or that she identified it in any manner. The marshal of the city court and a highway patrolman who went to the scene both stated they saw no lantern. Plaintiffs also called the defendant as their witness and on cross-examination he stated there was no light on the wagon.

Defendant showed by Hattie Hart that on the particular evening she took Mr. and Mrs. Ball for a ride in her new car and was proceeding west on the particular road about 6:30 p. m., and saw a man driving west with a team and wagon and there were no lights or reflectors on the wagon and she nearly struck it. After going by for some distance she turned and came back the same road and stopped at the place where the collision had occurred in the meantime, but she didn't get out of her car. Mr. Ball's testimony was to the same effect as Miss Hart's. Mrs. Ball did not testify. Mrs. Hallie Gann and her son Fred both testified that on the evening in question they were driving west from Pittsburg and passed the defendant, whom they recognized, and after going some distance came up behind some cars and had to stop as some traffic was coming east. The cars went around a wagon and they then went around it. There were no lights on the wagon.

In considering the force and effect of the answer to the above special question, it is well to remember that while a general verdict

imports a finding upon all the issues not inconsistent with the special findings, if the special findings cannot be reconciled with the general verdict, the special findings control, and if they are sufficiently full and complete in themselves judgment must follow them. If possible, special findings are to be so construed as to bring them into harmony with the general verdict. As against the general verdict, nothing will be presumed in favor of the special findings, but the latter may be viewed and interpreted in the light of the testimony. (See *Marley v. Wichita Transportation Corp.,* 150 Kan. 818, 96 P. 2d 877, and cases cited.) How are question No. 4 and its answer to be interpreted? As has been shown above, the evidence tended to prove contrary contentions, *i. e.,* that there was a lighted lantern on the wagon at least approximately meeting statutory requirements, and that there was not. As originally propounded, the question clearly stated that issue and could have been answered "yes" or "no" and either answer would have found some support in the evidence. We do not concede it had any right or power so to do, but the jury altered this question in manner above indicated, leaving the question in such form that it could be answered "yes" or "no." An affirmative answer would have absolved the decedent of negligence, but the jury chose not to return that answer. In view of the evidence, we cannot say the answer "A lantern" meant "lighted lantern"; we are impelled to a contrary conclusion, that there was a lantern, but that it was not lighted. The answer convicted the decedent of negligence that contributed to his death and his next of kin may not recover.

Reference has been made above to special question No. 6, the answer to which was stricken by the trial court. Defendant's answer pleaded that the death of the decedent was the result of unavoidable accident. One of the instructions to the jury was as follows:

"You are instructed that an accident is an event which takes place without one's foresight or expectation; an undesigned, sudden and unexpected event which happens unexpectedly and without the fault of anyone. In this connection you are instructed that if you find from all the evidence in this case that the injuries suffered by the deceased, W. B. Craig, were the result of an accident, as herein defined, then and under such circumstances, if you find them to have existed, the plaintiffs are not entitled to recover in this action and your verdict must be for the defendant."

No objection to that instruction was made by either party. Special question No. 6 and the answer returned by the jury was:

"Q. Do you believe from the evidence that the collision was the result of an accident as defined in the court's instructions? A. Yes."

The plaintiff moved to set aside the answer on the ground it was not supported by the evidence. As shown by the journal entry, the trial court sustained this motion—

"For the reason that, on account of this being the first case tried before an inexperienced jury, they evidently understood accident to mean an automobile collision as it is commonly used because it is inconsistent with their general verdict and their other special findings."

We shall not comment on the ability of the jury to understand all of the instructions, except the one quoted, and to render an intelligent verdict thereon, for it seems rather clear the trial court reached its conclusion because the answer was at variance with the general verdict. We are not now concerned with whether the instruction should or should not have been given—it was within the issues raised by the pleadings and no objection was made when it was given. After the answer was returned, it was sought to be set aside on the ground there was no evidence to support it. The reason assigned by the court for its ruling excludes the ground urged in the motion. If in this case an answer may be set aside because it is inconsistent with the general verdict, then that must be the rule in every case. Such a conclusion is at utter variance with the intent of the code of civil procedure (G. S. 1935, 60-2918), which provides that special findings inconsistent with the general verdict control the latter. The answer should not have been stricken for the reason assigned. With the answer reinstated, standing alone it absolved the defendant. The answer, however, was inconsistent with the special finding made by question No. 9 and its answer, viz.:

"Upon what act or acts of negligence on the part of the defendant do you base your verdict? A. Fast, reckless driving."

Except for the answer to special question No. 4, that situation would have compelled the granting of a new trial. (*Railroad Co. v. Holland,* 58 Kan. 317, 49 Pac. 71.) But here that result would not follow. The trial court, by its rulings, approved all the special findings except No. 6, which was erroneously set aside. It absolved both parties of negligence. Special finding No. 9 found defendant guilty of negligence, but special finding No. 4 found decedent guilty of negligence. Under such circumstances his next of kin could not recover, even though defendant was negligent. Any inconsistencies in the special findings themselves may thus be reconciled so that it clearly appears plaintiffs may not recover here.

Plaintiff's cross-appeal is predicated solely on the ground the verdict was for an inadequate amount. In view of our conclusions, it is not necessary to discuss the question.

The judgment of the trial court is reversed and the cause remanded with instructions to render judgment for the defendant.