No. 38,186

In the Matter of the Estate of Noel Erwin, Deceased. EFFIE F. RICHARDSON, Administratrix of the Estate of Roy Lee Blevins, deceased, *Appellant*, v. ORDA ERWIN, Administrator of the Estate of Noel Erwin, deceased, *Appellee*.

(228 P. 2d 739)

Opinion filed March 10, 1951.

A. L. *Foster*, of Parsons, and *Pete Farabi*, of Pittsburg, argued the cause, and *Sylvan Bruner*, *Morris Matuska* and *Don Musser*, all of Pittsburg, were with them on the briefs for the appellant.

*Elmer W. Columbia*, of Parsons, argued the cause, and *John B. Markham* and *Herman W. Smith, Jr.*, both of Parsons, were with him on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was a proceeding originally commenced in the probate court, under which the petitioner sought to establish a demand against a decedent's estate. The proceeding was certified to the district court and the trial there resulted in a judgment against the petitioner, who has appealed to this court.

In a preliminary way it may be stated that on January 25, 1948, one Noel Erwin, traveling alone, was driving a Studebaker truck north along a highway in Labette county; at the same time Leon Richardson was driving south along the same highway in a Plymouth coach accompanied by Lester Blevins, Roy Lee Blevins and Wayne McCabe. The two vehicles collided and the two drivers and the passengers other than Lester Blevins were killed. As the result of proceedings in the probate court Orda Erwin was appointed as administrator of the estate of Noel Erwin and Effie F. Richardson was appointed as the administratrix of the estate of Roy Lee Blevins who was her son.

Under date of December 24, 1948, Effie F. Richardson, administratrix of the estate of Roy Lee Blevins, filed her petition for allowance of a demand against the estate of Noel Erwin which, for our purposes, alleged the happening of the collision and the death of Roy Lee Blevins and charged Noel Erwin with being negligent in seven particulars, which we summarize as follows: (1) In driving the Studebaker truck to the left of the center of the highway and on the wrong side thereof and against the automobile in which Roy Lee Blevins was riding; (2) in driving at a high, dangerous and excessive rate of speed; (3) in failing to keep a careful and reasonable lookout for vehicles upon the highway; (4) in failing to turn aside and thus avoid the collision; (5) in failing to stop and thus avoid the collision; (6) in failing to slow down and thus avoid the collision; and (7) in failing to keep his truck under control and thus avoid the collision. Allegations as to the extent of damage need not be set forth. In due time Orda Erwin, administrator of the estate of Noel Erwin, filed his answer denying generally and alleging that if the death of Roy Lee Blevins resulted from the collision (1) that the sole and proximate cause of the collision and death was the negligence of Leon Richardson, the driver of the car in which Roy Lee Blevins was riding; (2) that Roy Lee Blevins was guilty of negligence in failing to take proper

steps and precautions for his own safety and to protect himself; and (3) that the collision and death was the result of an accident and not by reason of any fault or negligence of Noel Erwin. Petitioner's reply was a denial of matter inconsistent with her petition.

The proceeding, under the issues thus formed, was certified to the district court for trial. The trial was by a jury which returned a general verdict in favor of the Erwin estate and against the petitioner, and answered special questions submitted as follows:

"1. Do you find that the collision was the result of an accident, as defined by the Court's instructions?

"Answer: Yes.

"2. Whereabouts in the road were the left front wheels of each vehicle when the collision occurred?

"Answer: In the center track.

"3. At what rate of speed was the Studebaker truck driven by Noel Erwin traveling at the time of the collision:

"Answer: 36 mi per hr.

"4. At what rate of speed was the Richardson Plymouth car traveling at the time of the collision?

"Answer: 46 mi per hr.

"5. Do you find Noel Erwin guilty of negligence?

"Answer: No.

"A. If you answer the foregoing question in the affirmative, please state what act of negligence you find Noel Erwin, deceased, guilty of.

"Answer: ———"

The petitioner's motions to set aside the above answers and for a new trial were denied, and appeal to this court followed, the petitioner's specification of errors covering the matters hereafter discussed.

Appellant's contentions require a summary of the evidence, and of other events occurring during and after the trial.

Each of the motor vehicles was approximately six feet wide. The highway had been resurfaced recently with white chat or stone and had a ridge of that material along its east side. The highway was very dusty. At the place where the collision occurred the distance from the west side of the road to the row of material on the east was seventeen feet. The highway had three well defined tracks in the chat, one down the center and two about a car's width apart to either side. Lester Blevins, the surviving passenger, stated that he and his companions in the Plymouth had been skating and after taking one of the skating party to her home they went west along a road until they reached an intersection about 500 feet north of the scene of the collision and stopped. He saw a vehicle coming

from the south about one-half mile away; it was kicking up dust. The Plymouth turned south and when it was about 500 feet south of the intersection the approaching vehicle passed the Plymouth at a speed of about sixty miles an hour, stirring up the dust so that he could not see anything; that the dust blinded "us"; "about a split second after this car passed us we collided" with the Erwin truck. He stated that at that time the Plymouth car was on the right hand side of the road and was about a foot from the west shoulder and was traveling about twenty-five or thirty miles per hour. The next thing he knew he was in the hospital. He further testified he had filed a claim against the Erwin estate and had also filed a suit against Erwin's father. However, other witnesses who had no interest in the outcome of the proceeding testified they saw the Erwin truck some distance to the south of the collision proceeding north at a speed of about twenty to twenty-five miles an hour and that it was passed by another truck. One witness, and as far as the record shows, the last person to see the Erwin truck prior to the collision, stated she saw it a mile south and that it went down the road on its own right side at a speed of about twenty miles per hour and that when she last saw the truck it was about one-half mile south of the point of collision. It was also shown there was no wind and that a cloud of dust hung over the road. There was also testimony of other persons who were driving north on the highway and who, when some distance north of the collision and shortly before it occurred, passed a Plymouth car of a description similar to the one involved in the collision and in which four or five boys were riding and that the car was proceeding south at a high rate of speed and that their own driver pulled to the side of the road and almost stopped as the Plymouth car was weaving slightly. Another witness who lived on the east and west road and about one-half mile east of the intersection mentioned, stated that she went to the scene of the accident and saw the Plymouth car; that she had been in her yard for an hour and a half before the collision and would have seen any car passing to the east toward the intersection and that she did not see the Plymouth pass along the east and west road. No one except Lester Blevins saw the collision. Persons who arrived there immediately thereafter stated the rear wheels of the Plymouth were in the west ditch with the front wheels up on the highway and that the Studebaker was in the highway with the front wheels straddling the ridge of chat. These persons, in part, testified that the left front parts of the two vehicles had come to-

gether, and that steam was spouting from the radiator of the Plymouth. Other evidence will be referred to later if need be.

The record discloses that plaintiff objected to certain instructions to the jury, later discussed, and to the submission of special question No. 1, and after return of the general verdict and the special answers, filed a motion to have those answers set aside and a motion for a new trial. Those motions were denied and judgment was rendered in favor of the defendant. Plaintiff in due time appealed to this court.

Throughout the greater part of her discussion of her specifications of error, appellant contends that the evidence discloses that Lester Blevins, who survived the collision, was the only witness as to what happened immediately before and at the time of the collision and that he was in no way disputed or impeached, and that the jury had no right to disregard his version of what occurred, and our attention is directed to *Sundgren v. Stevens,* 86 Kan. 154, 119 Pac. 322, as holding that the jury are not authorized arbitrarily or from partiality or caprice to disregard uncontradicted and unimpeached testimony; to *Woulfe v. Interurban Railway Co.,* 115 Kan. 640, 223 Pac. 817, as holding that jurors have no right to disregard the only evidence upon a material question in controversy and return a verdict in direct opposition; to *Gibbs v. Central Surety & Ins. Corp.,* 163 Kan. 252, 181 P. 2d 498, where the rule is discussed, and to other authorities of like import which have been examined. She also contends that because the appellee offered in evidence a statement taken from Lester Blevins giving his version of what occurred, that appellee is bound by the statements therein, and our attention is directed to *Durham v. Carbon Coal & Min. Co.,* 22 Kan. 232; *Bell v. Johnson,* 142 Kan. 360, 46 P. 2d 886; *Ray v. Allen,* 159 Kan. 167, 152 P. 2d 851; *Burton v. Ostertag,* 166 Kan. 374, 201 P. 2d 676; and *Ort v. Allied Industries,* 166 Kan. 487, 203 P. 2d 234; wherein, under the facts in those cases it was held that where testimony is given by a party, or by agents of a corporation still in employ as to acts done by them, such testimony will be accepted as true. Without elaborating, the last rule contended for has no application to the facts of this case for under no view may it be said that Lester Blevins was a party or even an agent of a party to the action much less an agent of the appellee or his decedent. As to the rule first mentioned there can be no argument of its soundness, although there may be as to its applicability. In *Ragland v. Watkins Nat'l Bank,* 129 Kan. 426, 283 Pac. 632, it was held that some uncontradicted and unimpeached testimony tending to establish the claim

of a party having the burden of proof was not sufficient to reverse the finding of the trial court unless such evidence covered and reached all necessary points to complete the showing of his right to recover. In *Gibbs v. Central Surety & Ins. Corp.*, supra, is a further discussion of the same rule. See also *Weber Implement & A. Co. v. Dubach*, 132 Kan. 309, 295 Pac. 979; and *Kallail v. Solomon*, 146 Kan. 599, 72 P. 2d 966.

It is not necessary that we reiterate the evidence summarized above. While it is true that no one except Lester Blevins survived the collision and no one other than he testified as to the immediate event nor directly contradicted what he said, there was evidence of other circumstances that at least tended to discredit his version. His statement that the Plymouth car had been on the east and west highway, had stopped before entering the north and south highway and that it was traveling about twenty-five or thirty miles per hour and that the Studebaker truck approached at a high rate of speed, was to be measured against the testimony of a witness that the Plymouth car had not been on the east and west road, against the testimony of other witnesses that a car of like description, even though not positively identified, had passed going south just shortly before the collision, against the evidence that immediately after the collision steam was escaping from the broken radiator of the Plymouth, and against testimony that very shortly before the collision the Studebaker truck was seen proceeding north on the highway at a speed of twenty to twenty-five miles an hour. Without further recitation, we conclude it may not be said that the evidence of Lester Blevins was uncontradicted and must be accepted without deviation by the jury.

Appellant's first specification of error is that the trial court erred in its instruction, Nos. 8 and 9, to the jury. At the trial appellant did enter a general objection to the above and other instructions on the stated ground they were prejudicial and did not state the law of the case. She did however make a more specific objection to No. 8 and No. 9 and that the latter was wrong because there was no evidence showing an accident. Her argument in her brief is more directed to No. 9. In earlier instructions the court had advised the jury concerning negligence and proximate cause and that if plaintiff recover it must be on the grounds of negligence alleged in her petition. In instruction No. 8 the jury were told that negligence was not to be presumed but was a fact to be proven by the petitioner

and, in substance, that the mere receipt of injury and damage was not proof of negligence, nor did the mere proof thereof entitle plaintiff to recover unless the jury found, under the rules given, that such injury and damage, if any, resulted from the negligence of Noel Erwin, in the manner alleged in the petition "and was not merely accidental." Instruction No. 9 was as follows:

"You are instructed that if you shall find and believe, from a preponderance of the evidence, that petitioner sustained damage, as alleged by her in her petition, and you further find and believe from such evidence, said damage was accidental or was the result of an accident and was not the result of the negligence of Noel Erwin, as by petitioner alleged in her petition, then the petitioner cannot recover of the respondent in this case, and your verdict should be for the respondent.

"An accident is an inevitable casualty or the act of Providence or such unforeseen events, misfortunes, losses, acts or omissions as are not the result of any negligence or the misconduct of the deceased, Noel Erwin."

Directing attention to *Harshaw v. Kansas City Public Ser. Co.,* 154 Kan. 481, 486, 119 P. 2d 459, where it was said to be elementary that instructions should be germane to the definite issues made by the pleadings and limited to such of them as are supported by some evidence, appellant, although recognizing that appellee had pleaded the collision was due to accident, makes an extended review of the evidence, stressing the claim that the evidence of Lester Blevins was undenied and unimpeached and argues there was no evidence which warranted any instruction as to accident. She reviews at some length the facts in *Meneley v. Montgomery,* 145 Kan. 109, 64 P. 2d 550, which do bear some similarity to those in the case before us. In that case the defendant's request for an instruction on "pure and unavoidable accident" was denied, and the denial was held not to be erroneous. It is noted that in that opinion a quotation was made approvingly from 1 C. J. 393 that "mere accident" or "pure accident" are terms often used when it is desired to repel the idea of negligence and are equivalent to the words "not by defendants' negligence" but it was pointed out that defendant's own evidence required submission to the jury the question of its own negligence and did not present the question of pure or unavoidable accident.

Inasmuch as appellant's complaint is not that the instruction is inherently wrong or that the definition of "accident" as therein included is erroneous, but simply that the evidence was such the instruction should not have been given, we shall not discuss all that may be comprehended by the word "accident." Those inter-

ested may find the word, its meaning and use, discussed in 1 C. J. S. [Accident] p. 425, *et seq.;* 65 C. J. S. [Negligence, § 21] p. 429; and 38 Am. Jur. [Negligence, § 6] p. 647. (See also *The State v. Hansford,* 76 Kan. 678, 685, 92 Pac. 551.)

We have heretofore pointed out that appellant's contentions with respect to the scope of effect of Lester Blevins's testimony may not be sustained. At the time the trial court instructed the jury, the weight and credibility of the evidence remained to be determined. At that time it was clear that there had been a collision resulting in injury and damage, but as the trial court properly told the jury that did not prove that Noel Erwin was at fault. There was evidence also that each of the motor vehicles involved were six feet wide and that they were traveling on a highway whose extreme traveling space was a width of seventeen feet; that the highway had three tracks made by passing vehicles; that at some distance away from the collision a truck not involved in the collision came from the rear and passed the truck driven by Noel Erwin, leaving a big cloud of dust and that very shortly thereafter the collision occurred. None of that evidence disclosed that Erwin was not on his side of the road. The sole evidence tending to show he was not, was that of Lester Blevins that the right side of the Plymouth car was about a foot from the west side of the traveled part of the roadway. Lester Blevins was rendered unconscious by the collision and the next thing he knew he was in the hospital. There was other evidence tending to show that Lester Blevins's testimony was not accurate in all respects. It was for the jury to determine what happened, but when the instructions were given, it still remained open for decision whether Lester Blevins's version was to be fully credited for if it was Noel Erwin had to be on his left side of the center of the highway, whether Lester Blevins's version was not to be credited, and the evidence of high speed and a weaving Plymouth car given such weight, when considered with the condition of the road and where the vehicles were after the accident, that it might be said the Plymouth was on its wrong side of the highway, or whether the jury might find, under all the circumstances, Noel Erwin was not at fault, and not being at fault, the collision might be termed an accident. What the jury might eventually conclude has nothing to do with the correctness of the instruction.

Appellant also makes some contention she was entitled to have the jury say definitely that Noel Erwin was negligent, or that

Richardson, driver of the Plymouth car, was negligent, or that if both were negligent whether Roy Lee Blevins was guilty of contributory negligence. Instructions were given covering this phase of the matter, no objections were made thereto and no special questions other than as to Noel Erwin's negligence were submitted, and it is not ground for reversal simply because the jury, by its general verdict, did not agree with appellant, and in any event the question of Roy Lee Blevin's contributory negligence went out of the case when the jury found that Noel Erwin was not negligent.

The trial court did not err in giving instructions Nos. 8 and 9 to the jury.

Appellant's second specification of error is that the trial court erred in submitting special question No. 1 to the jury over her objection. It is contended that under *Foley v. Crawford,* 125 Kan. 252, 260, 264 Pac. 59, questions submitted to the jury should not only be within the pleadings but also within the evidence. The question submitted called for an answer on the question of accident. As has been shown heretofore, that question was within the pleadings and the evidence and needs no further attention here.

Appellant's third specification of error is that the trial court erred in not sustaining her motion to set aside the answers to special questions for the reason that the answers were irreconcilable and inconsistent with each other and were not supported by the evidence. Taking up first the latter part of that motion, it is noted that appellant again assumes that Lester Blevin's testimony must be fully credited and, if so, there is no testimony to support the answer to question No. 4. The question of Lester Blevin's testimony has been treated heretofore. An examination of it and other testimony satisfies us that the answer to question No. 4, as well as to the answers to other questions, are supported by the evidence. Appellant argues that the answers were inconsistent with each other, could not be reconciled with each other and with the general verdict, that they should have been stricken and a new trial granted. The gist of appellant's argument is that by answer No. 2 the jury found that Noel Erwin was guilty of negligence in driving his truck with its left front wheels in the center track of the highway, and being guilty of such negligence, the collision could not have been an accident as found by answer No. 1. A somewhat similar argument is made that by answer No. 5 Erwin was found not guilty of negligence which was inconsistent with answer No. 2.

Our attention is directed to authorities from other jurisdictions dealing with emergencies, which in view of the record we need not review, and to a number of our own decisions holding that consistent special findings control the general verdict when contrary thereto, but when they are inconsistent one with the other, some showing a right to a verdict and some showing the contrary, a new trial should be granted, citing *Railroad Co. v. Holland,* 58 Kan. 317, 49 Pac. 71; *Osburn v. Railway Co.,* 75 Kan. 746, 90 Pac. 289; *Willis v. Skinner,* 89 Kan. 145, 130 Pac. 673; *Craig v. Sturgeon,* 151 Kan. 208, 98 P. 2d 139; and *Packer v. Fairmont Creamery Co.,* 158 Kan. 191, 146 P. 2d 401. Many other cases supporting the rule as stated might be cited. It has also been held repeatedly that the general verdict imports a finding upon all issues in the case not inconsistent with the special findings and nothing will be presumed in favor of the special findings, which shall be given such construction, if possible, as will bring them into harmony with the general verdict, and that while nothing will be presumed in favor of the special findings as against the general verdict, they may be viewed and interpreted in the light of the testimony. (See e. g. *Marley v. Wichita Transportation Corp.,* 150 Kan. 818, 96 P. 2d 877, and cases cited.) It has been further held that in the consideration of special findings it is the duty of the court to harmonize them where it is reasonably possible to do so and the court is not permitted to isolate one answer and ignore others but is required to consider all together, and if one intrepretation leads to inconsistency and another to harmony, to adopt the latter. (See e. g. *Sams v. Commercial Standard Ins. Co.,* 157 Kan. 278, 139 P. 2d 859; *Underhill v. Motes,* 160 Kan. 679, 165 P. 2d 218, and cases cited.) Applying the above stated rules to the situation presented by the record before us, and considering all of the answers returned in the light of the evidence and the instructions to the jury, which guided the jury in making the answers, it is clear that by answer No. 1 the jury found there was an accident which, under the instructions to the jury, must be interpreted as holding that Noel Erwin was not at fault. By answer No. 5 the jury so found.

Is it possible to reconcile answers No. 1 and No. 5 with answer No. 2? While the evidence disclosed that there were three tracks in the gravel on the highway and that the middle of these tracks was in the center of the road, it did not disclose the width of either track. It was not shown how far the sides of the center track ex-

tended beyond the exact center of the seventeen foot roadway. The burden was on the plaintiff to prove the negligence of Noel Erwin, not on his administrator to prove he was not negligent. A finding that the left front wheel of each vehicle was in the center track is not necessarily a finding that Noel Erwin was on his wrong side of the road, and will not be so interpreted in view of answer No. 5. that he was not guilty of negligence. The three answers which it is contended are inconsistent with each other can be reconciled and so considered are consistent with the general verdict. The trial court did not err in denying the appellant's motion.

Appellant's fourth specification of error is that the trial court committed prejudicial error in admission of evidence. The contention arises out of the following: Charles Francisco testified he was traveling north on the highway and passed Erwin's truck about two miles south of where the collision occurred. He proceeded north and when about four-tenths of a mile north of where the collision later occurred he passed a dark gray Plymouth car with four or five boys in it. We need not follow out the rest of that testimony. On cross-examination he was asked whether he did not tell one Lee Carnahan the day after the collision that he had been racing with Noel Erwin, and a considerable part of the conversation between the two men was brought out. Later, on redirect examination inquiry was made as to further details of the conversation, and appellant objected that the questions called for hearsay, stating that questions asked on cross-examination were for impeachment purposes only. The objection was sustained. Later, as the result of further questions on redirect examination, the witness was permitted to tell a part of what he said during the conversation. The complaint also is that he was permitted to state what he said in a subsequent conversation, but from the record as abstracted, we cannot discern much but that in the later conversation he told Carnahan that some paper, the nature of which is not disclosed, did not involve the witness. The gist of appellant's complaint is that her questions to the witness were asked for impeachment purposes only, that the witness had not then been impeached, and that it was not permissible for him to support his testimony by showing he had made other statements in conformity with his testimony. In support she cites *State v. Fouts,* 169 Kan. 686, 695, 696, 221 P. 2d 841. In that case as a witness for the state, a woman had testified concerning the fact that she had seen a truck on the highway at a particular

time, no impeaching questions being asked her by the defendant. Over defendant's objection the state then offered testimony of her husband that his wife had told him on the day in question about seeing a truck on the road. It was the husband's testimony which this court held to be erroneously admitted. The facts in the case at bar are clearly distinguishable. In this case, after the witness had testified on direct examination, appellant brought the Carnahan conversation into the examination. She did not limit cross-examination to asking whether a certain statement was made by Francisco to Carnahan but asked about another conversation several months later. It would seem that within reasonable limits at least that where appellant asked about parts of a conversation, appellee could have the witness explain and amplify the same subject matter. The rule seems to be that where matters tending to discredit a witness have been drawn from him on cross-examination it is proper to permit him to explain such matters to rebut their discrediting effect. See 70 C. J. [Witnesses § 1031], p. 820. and 58 Am. Jur. [Witnesses § 670], p. 367. Appellant's contention of error is not sustained.

Appellant's fifth specification of error is that the trial court erred in overruling her motion for a new trial. Her contentions under this heading go essentially to the fact that the instructions were erroneous, the principal reason asserted being that the testimony of Lester Blevins was in no way impeached nor disputed and that the instructions, in parts, covered matters outside the issues. What has been said previously disposes of such a contention.

Appellant's sixth specification that the trial court erred in rendering judgment is predicated on an assumption the trial court erred in the matters previously found not to be erroneous.

It follows that the judgment of the trial court should be and it is affirmed.