No. 43,169 and No. 43,184

In re Estate of Mary S. Winn, Deceased. (ARTHUR H. KLIEWER, *Appellant,* v. DAISY MAURER, *Appellee.*)

(380 P. 2d 352)

Opinion filed April 6, 1963.

*Vernon A. Stroberg,* of Newton, argued the cause, and *Kenneth G. Speir, Herbert H. Sizemore,* and *Richard F. Hrdlicka,* all of Newton, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes, Robert L. Howard,* and *Charles J. Woodin,* all of Wichita, were with him on the briefs for the appellant.

*Tom Harley,* of Wichita, argued the cause, and *Lester Wilkinson* and *George Grist,* both of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: The appeal in case No. 43,169 is from the trial court's judgment denying the probate of decedent's will, from orders over-ruling the executor's motion for new trial and to set aside the trial court's findings of fact, and from the further order allowing an attorney's fee to the opponent of the will. The appeal in case No. 43,184, actually a cross-appeal and for that reason consolidated with the original appeal for appellate review, is from the trial court's order allowing attorney fees to the executor.

The decedent, Mary S. Winn, had lived with her only daughter and heir, Lelia Howerton, since the death of Lelia's husband in 1941. In November, 1960, Lelia, who was seventy-five years of age, became physically and mentally ill and early in December, 1960, she was taken to the hospital where she remained until December 31, 1960, when she was removed to a rest home in Winfield. A will executed by Lelia on March 15, 1960, but never witnessed, was found among Lelia's papers.

On January 10, 1961, Lelia died and the inventory and appraisal of her estate indicated she owned personal property valued at $4,185.35 and that she and Mary, as joint tenants or tenants in common, owned real and personal property valued at $17,193.62.

Mary, who was ninety-five years of age, had suffered a stroke some three years before. She was paralyzed on the right side, hard of hearing and had very poor eyesight. During the afternoon of December 31, 1960, when Mary was preparing to go to live in the home of a niece, Veva Schwyhart, in Winfield, since Lelia

was to be in a rest home there, Mary asked Arthur Kliewer to prepare a will for her. Thereafter Kliewer prepared Mary's will by copying the formal paragraphs from samples he had including one drawn earlier for Mary by Mr. Sizemore, an attorney, which had never been executed by Mary. Kliewer then wrote in the bequests Mary desired to make as Mary instructed him to do. At Mary's request, he called her neighbors, James M. and Alma E. Flummer, to witness the will. They both inquired of Mary if she knew and understood what was in the will and if it was all right. She answered that she did and thereupon Mary properly executed the will in the presence of the Flummers and they signed as attesting witnesses.

Mary had a number of nieces, nephews, grandnieces, and grandnephews, but we shall mention only those pertinent to this appeal. One niece, Daisy Maurer, the opponent of the will and appellee here, is the daughter of a prior deceased brother of Mary. Another niece, Veva Schwyhart, is the daughter of a prior deceased sister of Mary. James Davey, one of Daisy Maurer's witnesses, is the grandson of a brother of Mary's deceased husband, and therefore is not related to Mary. Earl A. Howerton is a brother of Lelia's deceased husband, Lura Howerton is Earl's wife, and Betty Howerton Kliewer, wife of appellant, is Earl's daughter. In actual fact, neither the Howertons nor the Kliewers are related to Mary.

Mary's will in pertinent part provides:

"First: I direct that all of my just debts, expenses of my last illness, funeral expenses, and expenses of administration be paid by my executor.

"Second: A $5,000.00 Insurance policy with Mutual Life Insurance Co. of New York goes to E. A. or Lura Howerton of 412 Magnolia, Newton, Kansas.

"Third: My 1½ carat diamond ring goes to Lura Howerton; my twin diamond ring one carat each goes to Betty Howerton Kliewer. Also my platinum ring with 3 diamonds and white gold ring with 3 diamonds goes to Betty Howerton Kliewer of 901 So Pine, Newton Kansas.

"Fourth: My paintings, pictures, china and glassware goes to Earl & Lura Howerton and Betty and Arthur Kliewer.

"Fifth: All other property, personal or real shall be disposed of by my executor, hereinafter named and after all bills and expenses have been paid, then ½ (one-half) of the residue shall go to Earl and Lura Howerton, 412 Magnolia Newton Kansas and ½ (one-half) shall go to Veva Schwyhart, 814 E. 11th St., Winfield Kansas.

"Sixth: I hereby nominate and appoint Earl Howerton as executor of this my last Will and Testament; and in the event that he should, for any reason, fail to qualify as such executor or should be unable to continue to serve as

executor then and in that event, I hereby nominate and appoint Arthur H. Kliewer as executor or successor executor of this, my last Will and Testament, either of said persons to serve without bond.

"I hereby give and grant my executor or successor executor full power and authority to control, manage, sell, mortgage, pledge, or lease for any purpose and for any length of time, or otherwise dispose of my estate and all or any part of my property for any purpose whatsoever as he may see fit and without being required to obtain any order therefor from any probate or other court, upon such terms, in such manner, and at such times as to him seems most advantageous to the estate.

"In Witness Whereof, I, Mary S. Winn have hereunto subscribed my name to this, my last Will and Testament, this 31st day of December, 1960.

"Mary S. Winn
"Testatrix

"We, the undersigned, do hereby certify that the foregoing instrument was at this time therein stated signed, declared and published by Mary S. Winn as and for her last Will and Testament in the presence of us, and each of us, at her request, in her presence, and in the presence of each other, have hereunto subscribed our names as witnesses the day and year last above written.

"James M. Flummer
"Witness
"415 N. Clifton
"Mrs. Alma E. Flummer
"Witness
"415 N. Clifton
"Wichita"

Eight witnesses, including Mary's doctor, the two attesting witnesses to Mary's will, her niece, Veva Schwyhart, and Veva's son, Darwin Schwyhart, testified that on December 31, 1960, Mary was competent, she knew the extent of her property, she directed how bills were to be paid, and she told the attesting witnesses to her will she knew what was in the will, that it was the way she wanted it, and she personally requested them to witness her signature.

The trial court properly overruled defendant's demurrer to plaintiff's evidence and defendant introduced the testimony of Mr. and Mrs. James Davey who had known Mary and Lelia for twenty-six years. Their testimony was to the effect that Mary was paralyzed on the right side and was hard of hearing; that either Mrs. Davey or her daughter visited Mary every day; Mary cried whenever the subject of her leaving her home was mentioned; she wanted to be with Lelia because she was concerned about her but she did not want to go to the home of her niece, Veva Schwyhart, in Winfield.

The Daveys further testified Mary did not know the extent of her property or to whom it rightfully should go although she did

know who her relatives were; on December 31, 1960, when Mary left for Winfield, she understood Mrs. Davey's questions when she heard them, even though she was very hard of hearing, and apparently gave intelligent answers; the only time Mary did not give correct "Yes" or "No" answers was when she did not hear the question; the Daveys had called their own doctor in on the case to relieve Mary's doctor; Mr. Davey had explained the change of doctors to Mary and she seemed to understand it all right; Mary had talked about their shortage of money and had said they could not afford the big meals Veva prepared for them.

The trial court's formal journal entry of judgment contained the three following findings:

"That the deceased, Mary S. Winn, on the 31st day of December, 1960, executed the will offered for probate herein, and acknowledged the same as her Last Will and Testament, in the presence of James S. Flummer and Alma E. Flummer. However, the Court finds that Mary S. Winn did not write the will, nor did she dictate the will.

"The Court further finds that Mary S. Winn did not read the will, nor was the will read to her.

"The Court further finds that Mary S. Winn did not know the contents of the will at the time she executed it and acknowledged it as her Last Will and Testament."

The trial court ordered that the will be denied for probate.

Kliewer, the petitioner below and appellant here, moved for new trial and to strike the findings of fact because they were not supported by the evidence and were in direct contradiction to the believable, consistent, and unimpeached testimony and evidence. These motions were in due course of time overruled by the trial court.

On appropriate motions, attorney fees for Kliewer, as well as for Daisy's counsel, were allowed for their services in both the probate and district courts. This appeal followed.

Appellee contends appellant's testimony shows that in her will Mary specifically bequeathed property she did not own, or have an interest in, and this indicates she did not know the property she possessed. She further contends this raises another question as to whether Mary could specifically bequeath and devise property she did not own or have an interest in but which she later acquired by virtue of the death of Lelia.

G. S. 1949, 59-601, provides as follows as to who may make a will:

"Any person of sound mind, and possessing the rights of majority, may dispose of any or all of his property by will, subject to the provisions of this act."

If decedent, under G. S. 1949, 59-602, lacked testamentary power to will certain items of property at the time she executed her will, such bequests would, of course, be void. (See, also, 1 Bartlett's Kansas Probate Law and Practice, rev. ed., § 361, p. 421.) However, property Mary subsequently acquired because she was Lelia's only heir at law would be subject to the terms of her will. We are, therefore, of the opinion this contention of appellee does not support the trial court's finding that Mary did not know the contents of her will at the time she executed it.

Another contention of appellee is that it cannot be argued a ninety-five year old woman, who was paralyzed on one side and had suffered several strokes during the three years preceding her death, had any expectancy in the estate of her daughter. The record before us discloses the mother actually survived her daughter for a period of twelve days and that she was her daughter's only heir at law. Under such circumstances no judicial body could make a finding based on a contrary presumption.

This brings us to the paramount question before us. It may be divided into three parts: Was there any evidence to support the trial court's findings? Were those findings material in a proceeding seeking to admit a decedent's will to probate? If the findings were material, did the trial court disregard the only evidence thereupon and make a directly opposite determination? As to the first finding, no authority is presented by the parties, and our diligent research has produced none, that a finding the decedent did not write the will and did not dictate the will would justify the court in denying probate thereof. The same is true of the second finding that decedent did not read the will nor was it read to her. However, the third finding that decedent did not know the contents of the will at the time she executed it is more in the nature of a conclusion and may be said to be of some materiality. The record shows abundant testimony on the part of appellant's witnesses that Mary knew the contents of the will that she signed, executed, and had attested by two competent witnesses and appellee did not object to nor move to strike any of such testimony. As to the presumption such testimony was considered by the trial court, rule 53 of this court was discussed in *In re Estate of Walker*, 160 Kan. 461, 163 P. 2d 359, and it was there held:

"Rule 53 of this court which reads, 'In trials before the court, without a jury, where evidence is admitted over proper objections, and not stricken out

on timely motion therefor, it shall be presumed that such evidence was considered by the court and entered into its final decision in the case,' *has no application in the absence of a timely motion to strike the objectionable testimony.*" (Syl. ¶ 3.) (Our emphasis.)

A demurrer lodged against appellant Kliewer's testimony was overruled by the trial court and thus there are two reasons why the trial court should be presumed to have considered this evidence. Neither of the Daveys testified that Mary did not know the contents of the instrument she signed, and we cannot put such words into their mouths. Appellee makes the statement that appellant could have called Earl Howerton as a witness because Earl was present when the will was written. Such was not appellant's burden as is shown by the rule set out in *In re Estate of Walter,* 167 Kan. 627, 208 P. 2d 262, where this court said:

"When a will is offered for probate, and the proponents have offered substantial competent evidence that it was executed according to law and that the testatrix at the time it was executed had testamentary capacity, those who oppose its probate have the burden of proof of any defenses alleged." (Syl. ¶ 1.)

See, also, *In re Estate of Smith,* 168 Kan. 210, Syl. ¶ 6, 212 P. 2d 322.

On this same point appellant directs our attention to *In re Estate of Koellen,* 162 Kan, 395, 396, 176 P. 2d 544, where it was held:

"While it is indispensable to the validity of a will that a testator should know its contents at the time of execution, knowledge will ordinarily be presumed from the execution of the instrument. The presumption, however, is only a prima facie one and may be rebutted." (Syl. ¶ 8.)

The record is clear that the trial court disregarded the evidence offered and admitted as to Mary's knowledge of the contents of the will she executed. This the trial court could not do by reason of our long-established rule set out in *In re Estate of Erwin,* 170 Kan. 728, 733, 228 P. 2d 739, cited with approval in our recent case of *Lorbeer v. Weatherby,* 190 Kan. 576, 376 P. 2d 926, as follows:

"A jury is not authorized arbitrarily or from partiality or caprice to disregard uncontradicted and unimpeached testimony, nor to disregard the only evidence upon a material question in controversy and return a verdict in direct opposition." (p. 580.)

The above would, of course, apply to the trial court.

In view of the foregoing authorities, as well as those to be found in 9 West's Kansas Digest, Wills, 1963 Cum. P. P. § 289, p. 65, § 302 (1), p. 66, we conclude the trial court erred (1) in disregarding the

testimony of appellant and also that of the two attesting witnesses that decedent knew the contents of her will at the time she executed and acknowledged the will, which was the only evidence offered thereon, and (2) the trial court further erred in making a directly opposite finding that decedent did not know the contents thereof.

Both parties strenuously object to the allowance of attorney fees to counsel for the opposing side in the court below but appellate courts are committed to the rule that such matters are within the discretion of the trial court and we shall not disturb the allowances. (*In re Estate of Reynolds,* 176 Kan. 254, 258, 270 P. 2d 229; *In re Estate of Sowder,* 185 Kan. 74, 340 P. 2d 907.)

The judgment of the trial court is reversed with directions to admit the will to probate.

SCHROEDER, J., not participating.