No. 40,606

MARY LORRAINE KNOX, *Appellee,* v. ROY A. BARNARD, *Defendant,* and JOE EVANS, *Appellant.*

No. 40,616

MARY LORRAINE KNOX, *Appellee,* v. ROY A. BARNARD, *Appellant,* and JOE EVANS, *Defendant.*

(317 P. 2d 452)

Opinion filed November 9, 1957.

*Rowland Edwards,* of Waterville, argued the cause, and *W. M. Beall,* of Clay Center, was with him on the briefs for the appellant Roy A. Barnard.

*Lyle C. Holland,* of Lincoln, Nebraska, argued the cause, and *Robert E. Ferguson,* of Marysville, was with him on the briefs for the appellant Joe Evans.

*Richard W. Mason,* of St. Joseph, Missouri, argued the cause, and *Robert F. Galloway,* of Marysville, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: This was an action to recover for the wrongful death of plaintiff's husband alleged to have been caused by the concurrent negligence of two defendants. The trial resulted in a verdict and judgment for plaintiff in the sum of $22,500 against both defendants. Each defendant has appealed and the appeals were consolidated in this court.

Before discussing the pleadings and the specific evidence introduced, it is considered advisable to set out a brief recital of the over-all situation immediately prior to and at the instant of the collision resulting in the death of decedent.

On the morning of January 17, 1956, defendant Barnard left his farm near Beatrice, Nebraska, in his 1953 two-ton Ford truck with a load of nine cattle, weighing approximately 9,000 pounds. His truck weighed about 8,000 pounds. His destination was St. Joseph, Missouri. Upon reaching Marysville he headed east on U. S. Highway 36. The weather was cold and clear and there was snow and ice on the highway. About twenty miles east of Marysville he reached the top of a long grade. East, ahead of him, was a long downhill grade at the bottom of which was a concrete bridge some 1376 feet distant. The highway was level for a stretch of about 300 feet west of the bridge. East of the bridge the highway was level for about 500 feet and then started uphill, the brow of which was about 1730 feet east of the bridge. The width of the

bridge, for travel purposes, was twenty feet three inches, and it was 100 feet long. The highway was of blacktop construction and was twenty-nine feet seven inches wide west of the bridge and thirty feet one inch wide east of the bridge. The shoulders were narrow and insufficient for a car to drive onto.

As Barnard proceeded east down the grade in question he noticed defendant Evans' Ford car about 200 feet ahead of him, also proceeding east. Barnard started moving down the grade in low-high gear, and as he proceeded he gained distance on the Evans car. When almost down the grade he noticed the rear brake lights flash on the Evans car, which was then about 150 feet ahead of him. He then, for the first time, noticed a car approaching from the opposite direction. This car was an Oldsmobile in which plaintiff's husband was riding in the front seat as a passenger.

Both Barnard and Evans were in the right (south) traffic lane. When Barnard saw the brake light flash on Evans' car he started "pumping" his brakes. This caused his truck to slide, so he ceased. The reason Evans applied his brakes to slow down and eventually come to a stop immediately west of the bridge was that he was fearful of meeting and passing the Oldsmobile, coming from the east, on the bridge. Barnard, in the meantime, thinking that Evans merely was slowing down, and not realizing that he would ultimately stop, found himself gaining on Evans. After the Evans car stopped Barnard, realizing that he would collide with it unless he also stopped, applied his brakes "hard." This caused his load of cattle to shift to the south and caused the front end of his truck to shift to the left (north) lane. In the meantime the Oldsmobile was continuing to approach from the east. It crossed the bridge and collided head-on with the right front of Barnard's truck in the north traffic lane immediately west of the bridge, almost flush with the Evans car which had come to a stop in the right (south) lane of traffic. The Evans car was not touched. Plaintiff's husband died as the result of injuries received in the crash.

And so we have the picture, the circumstances of which, from the standpoint of each of the three drivers, are familiar to all who have driven on the highways in the wintertime. Evans, being fearful of passing an oncoming car on a bridge considerably narrower than the highway on either approach to it, slowed down and eventually stopped just before reaching the bridge. Barnard, following Evans down the highway, noticed him slow down but did not realize he

was going to come to a complete stop until he, Barnard, was so close to him that he had to apply his brakes "hard" in order to avoid crashing into the rear of Evans' car. Due to his load and the condition of the highway this caused Barnard's truck suddenly to swerve into the left traffic lane in the path of the westbound Oldsmobile, the driver of which, under the circumstances, was unable to avoid the collision.

The allegations of the pleadings need be mentioned only briefly.

The petition charged defendant Barnard with negligence in driving his truck at a high and dangerous rate of speed and in following the Evans car too closely, considering the condition of the highway; in failing to keep his truck under proper control; in failing to keep a reasonable and vigilant lookout for other vehicles upon the highway, and in permitting his truck to get into the wrong traffic lane.

Defendant Evans was charged with negligence in stopping his car upon the highway thereby creating a hazard to other vehicles; in failing to keep a reasonable and vigilant lookout for other vehicles upon the highway; in failing to signal his intention to stop his car upon the highway, and it was further alleged that the negligence of both defendants operated separately and concurrently so as to constitute the direct and proximate cause of the collision.

The separate answer of defendant Barnard denied negligence on his part and alleged the accident happened in spite of all proper care and diligence on his part and notwithstanding every possible effort on his part to prevent it, and that by reason of the stopping of the Evans car he, Barnard, was confronted with a sudden emergency in which he was compelled to attempt to bring his truck to a stop on the slippery and treacherous highway in time to avoid a collision. It was further alleged that the direct and proximate cause of the accident was the carelessness and negligence of defendant Evans in stopping his car and blocking the highway in violation of law, and that the negligence of the driver of the Oldsmobile in driving at an excessive and dangerous rate of speed was imputed to decedent, and that such negligence, combined with the negligence of Evans, was the proximate cause of the collision.

The separate answer of defendant Evans alleged that as he proceeded along the highway he observed the Oldsmobile approaching from the opposite direction at a high and dangerous rate of speed, swerving from one side of the highway to the other, and that in view

of the circumstances confronting him he brought his car to a stop rather than to attempt to pass the Oldsmobile on the bridge. This answer, after denying such defendant's own negligence, admitted the plaintiff's allegations of negligence on the part of defendant Barnard.

We now discuss plaintiff's evidence.

C. T. Mohrbacher, the county engineer, testified as to the distances and measurements heretofore related; that the shoulders of the highway at the place in question were not more than a foot wide, and that on the south side of the highway at the west end of the bridge there was a six-foot ditch extending back west which gradually lessened to four feet one inch at 200 feet and to two feet ten inches at 300 feet.

Leonard Grable, the undersheriff, had been called to the scene of the collision. When he arrived he found Barnard's truck and the Oldsmobile in the north traffic lane. Visibility was unlimited and he experienced no difficulty, such as slipping or sliding, as he drove down the hill, although the condition of the highway was such that any driver would be required to use caution in respect to speed. It had snowed a little the night before and the highway was slick, being covered with ice and snow. While he was at the scene several cars and trucks passed each other on the bridge. Although he did not skid as he reached the scene he knew that he was going to stop and did not attempt suddenly to do so under an emergency condition.

Dean Henoch, a member of the Kansas Highway Patrol, arrived on the scene and made an investigation. His testimony was to the effect there was sufficient room on the bridge for two cars to pass, as well as for a truck and car to pass; that other automobiles arriving at the scene did not slip or slide; that the average width of a passenger automobile is six feet and that of the average cattle truck is between nine and ten feet, and that the collision occurred in the north traffic lane, and he quoted Barnard as saying that he had been following the Evans car and that when it stopped in front of him he applied his brakes which resulted in his truck swerving to the north side of the road in the path of the oncoming Oldsmobile. The witness also quoted Evans as saying that as he approached the bridge from the west he saw the Oldsmobile coming from the east at what to him appeared to be a high rate of speed and out of control and so he stopped to let the oncoming car across the bridge rather than to attempt to pass on the bridge.

William E. Herzog was a passenger in the westbound Oldsmobile, which was driven by Fred E. Dawkins. Mr. Herzog was riding in the rear seat and he testified that at no time was the Oldsmobile skidding or sliding on the highway; that its speed was thirty to thirty-five miles per hour coming across the bridge; that at all times it was entirely in its right (north) traffic lane; that when he first noticed Barnard's truck it was immediately behind the Evans car, and that all of a sudden the truck pulled over into the north portion of the highway. The witness "ducked" behind the front seat just before the impact.

As stated, Fred E. Dawkins was the driver of the Oldsmobile. Plaintiff's husband was riding in the front seat with him. This witness testified that he did not experience any difficulty in driving that morning; that his car had not been slipping or sliding; that at all times he remained in the right (north) traffic lane; that as he approached the bridge from the east he did not see anything on his side of the highway to indicate any danger in crossing the bridge; that he noticed the Evans car slowing and the thought occurred to him that the truck immediately behind Evans might therefore be in a "bad spot," but that the hazard came about with such split-second suddenness he was unable to avoid the collision.

Paul Koch also was driving west on the highway on the morning in question and the Oldsmobile overtook and passed him at a point about one-half mile east of the bridge. It was traveling forty to forty-five miles per hour; appeared to him to be under control at all times, and was not swerving or slipping on the highway. He observed the Evans car slow down and observed that Barnard's truck had to "cut around him or take him in the back end."

Kathleen Koch, daughter of the witness Paul Koch, was riding with her father and also saw the collision, and she testified that: "Well, we were coming from the east and the truck and a car ahead of it was coming from the west and this car had slowed down and the truck tried to stop and couldn't and so it seemed like he took to the north lane and he hit the Oldsmobile head-on."

At the conclusion of plaintiff's evidence defendant Evans orally demurred and moved for a dismissal as to him, or, in the alternative, a directed verdict in his favor, on the ground the evidence was insufficient to sustain a cause of action in favor of plaintiff and against him, and that the proof failed to establish any negligence on his part.

This demurrer was overruled, whereupon each defendant introduced his evidence.

Defendant Barnard testified as to the circumstances confronting him, heretofore related, as he proceeded down the long grade behind the Evans car. He noticed the oncoming Oldsmobile immediately after he saw the red brake lights flash on Evans' car. He estimated the speed of the Oldsmobile at about seventy miles per hour and his own speed at about thirty-five miles per hour. He knew that Evans was applying his brakes which indicated that he was either slowing down or was going to stop, but, thinking that Evans was merely slowing down, did not apply his brakes "hard" until he saw that Evans actually was stopping. This caused his load to shift and threw his truck out of control on the slippery highway. He was "pretty close" behind the Evans car when it, the Evans car, came to a "normal stop." A fair resumé of other testimony by Barnard is to the effect that due to his load, the condition of the highway, the stopping of the Evans car, and the oncoming Oldsmobile, he found himself in a "squeeze" from which, in the sudden emergency and under all conditions then existing, he was unable to extricate himself.

Defendant Evans testified that he first observed the Oldsmobile when it came over the brow of the hill east of the bridge, and he estimated its speed at seventy-five miles per hour. He concluded that he "didn't want on the bridge with that fellow," and so started to slow down and ultimately came to a stop immediately west of the bridge. His car was in good mechanical order, his brake lights were operating, in slowing or stopping his car did not skid, and he at all times remained in the right (south) traffic lane. His car was equipped with a rear vision mirror but he had not looked in it and was unaware of the fact that Barnard's truck was immediately behind him. In retrospect, he admitted that his stopping was perhaps unnecessary and that he could have proceeded safely across the bridge.

Irvin J. Mahoney, who was riding with Evans, testified that they saw the Oldsmobile approaching from the east at a high rate of speed and that it "looked like a treacherous proposition"; that Evans made some remark about letting "them have the bridge," and that Evans pulled over to the right as far as he possibly could and came to a slow stop.

At the conclusion of all the evidence defendant Evans renewed his demurrer to plaintiff's evidence and moved for a directed verdict and a dismissal of plaintiff's case as against him, all of which was overruled.

As heretofore stated, the jury returned a verdict against both defendants in the amount of $22,500, and, all post-trial motions by each defendant being overruled, judgment was entered on the verdict.

Each defendant has appealed.

The sole contention raised by defendant Evans in his appeal is that the court erred in overruling his demurrer to plaintiff's evidence, and that as to him the case should not have been submitted to the jury. In support of this contention he cites *Curtiss v. Fahle*, 157 Kan. 226, 139 P. 2d 827 (also cited at p. 78 of the annotation found at 29 A. L. R. 2d 5), and *Strimple v. O. K. Warehouse Co.*, 151 Kan. 98, 98 P. 2d 169. The thread of his argument is that inasmuch as the evidence failed to show that he was ever on the wrong side of the road, or that he made a sudden stop, or that he failed to signal his intention to slow down and eventually stop, no actionable negligence can be charged against him.

The Curtiss case involved a rear-end collision between a truck, the speed of which was suddenly decreased without any signal, and a following vehicle in which plaintiff was riding. The evidence disclosed that plaintiff and his driver observed the truck in front of them and its sudden decrease in speed when they were 150 feet behind the truck, and it was held that under the circumstances the failure of the truck driver to give a signal of intention to decrease speed was not the proximate cause of the collision.

In our opinion, neither of the cases cited is of much help to defendant Evans if for no other reason than that in each of those cases there was no question concerning joint tort-feasors. In the case before us the preceding and following drivers are charged as joint tort-feasors and the question of contributory negligence, one against the other, is not a factor, and in neither of the cited cases was there any question of liability of one or both drivers to a third party.

Evans also argues that under the circumstances confronting him he did only that which the average driver would have done under like conditions and circumstances. In a sense perhaps that is true, but the fact still remains that the question was one for a jury to determine. In *Martin v. National Mutual Casualty Co.*, 169 Kan. 110, 217 P. 2d 1055, the defendant truck driver stopped his truck immediately in front of a bridge because of a fear that his truck might not clear the side of the bridge with approaching traffic—quite similar to the action of Evans in this case. Plaintiff's automobile col-

lided with the rear end of the truck. Other physical facts also are different from those in the case before us, but, nevertheless, it was held that it was a question of *fact*, and not of *law*, whether defendant was guilty of negligence in stopping his truck where he did. We think the same is true of the case before us and that under all of the facts and circumstances the question of negligence on the part of Evans was properly submitted to the jury. By its general verdict the jury found him to be negligent as a matter of *fact*, and his contention that defendant Barnard really was the one responsible for the collision is unavailing for the reason that where the concurrent negligent acts of joint tort-feasors contribute to bring injury to a third party the degree of their respective culpability is immaterial. (*Banbery v. Lewis*, 173 Kan. 59, 68, 244 P. 2d 202.)

The court did not err in overruling the demurrer of defendant Evans to plaintiff's evidence and in submitting the case to the jury as to him, and with respect to Evans the judgment is therefore affirmed.

In the appeal by defendant Barnard his sole contention is that the court erred in refusing to instruct the jury on his theory and defense of unavoidable accident.

At the conclusion of all of the evidence Barnard requested the following instruction:

"You are instructed that in the ordinary walks of life injury and damage sometimes occur to persons and property that cannot be traced to the fault or negligence of anyone and constitutes only a mere accident for which no one is responsible and for which no one can be held liable. Therefore, if you determine that the accident in question was such an accident that was unavoidable, your verdict should be for the defendants."

Plaintiff made an objection to the giving of this instruction and the court sustained it on the ground that in its opinion the evidence in the case did not reflect a situation which would require the giving of such an instruction.

Barnard's argument is that inasmuch as he pleaded the collision, insofar as he was concerned, was unavoidable, and that the evidence so showed, he was entitled to have the instruction given, and a number of cases are cited to the effect that it is the duty of the court to instruct on the law applicable to the theories of both parties so far as they are supported by any evidence.

Conceding that to be a correct general statement of the law (*In re Estate of Erwin*, 170 Kan. 728, 735, Syl. 3, 228 P. 2d 739), the

question of course arises in every case as to whether the evidence warrants the giving of a particular instruction.

Generally speaking, as was pointed out in *Meneley v. Montgomery*, 145 Kan. 109, 113, 64 P. 2d 550, the terms "mere accident" or "pure accident" are terms often used when it is desired to repel the idea of negligence, and are equivalent to the words "not by defendants' negligence."

In 65 C. J. S., Negligence, § 21, beginning at page 429, are found statements to the effect that "unavoidable accident" does not necessarily mean one which it is physically impossible in the nature of things for defendant to have prevented, but one in which ordinary care and diligence could not have prevented the happening of the thing that did happen, and is one which could not have been foreseen or prevented; that where an accident is caused by negligence there is generally no room for the application of the doctrine; that in order to bring a case within the rule of unavoidable accident it is not sufficient that the injury should have been inevitable or unavoidable at the time of its occurrence, for one who by his own negligence has created, brought about, or failed to remedy a dangerous condition or situation is liable for a resulting injury to another, although, in view of the condition or situation which existed at the time, the injury could not have been prevented, and that one seeking to avail himself of the protection of the rule must show that he himself was in no way to blame for the happening. It is further said that a case is not brought within the rule by the fact that an injury is partly attributable to inevitable accident, and that one is liable for the combined consequences of an inevitable or unavoidable accident and his own negligence.

With respect to Barnard, the evidence established that as he was following Evans down the grade with a heavy load, on a slippery highway, he was traveling about thirty-five miles per hour; was following Evans rather closely, and that his truck could not be controlled by application of his brakes in a "pumping" fashion. He was gaining distance on Evans and was on level ground when the brake lights flashed on Evans' car. The lights indicated to him that Evans was going to do one of two things—slow down or stop. True, he thought Evans was simply slowing. In the meantime the Oldsmobile, approaching from the east, was in plain view. It is conceded the collision occurred in Barnard's left traffic lane. In his brief he states that he does not contend the court erred in submitting the

question of his own negligence to the jury. As between Evans and Barnard, the jury was fully instructed on the law of acting in emergency. A careful examination of the evidence convinces us that as to Barnard it did not present a question of unavoidable accident, but rather, a question of his negligence in operating his truck in the manner shown under the existing conditions and circumstances.

Therefore, it may not be said the court erred in refusing to give the instruction requested, and with respect to defendant Barnard the judgment is likewise affirmed.