No. 41,253

Elizabeth L. Kreh, *Appellant*, v. Andrew Wayne Trinkle, *Appellee*.

(343 P. 2d 213)

Opinion filed August 3, 1959.

*Richard Millsap*, of Kansas City argued the cause, and *Allen Meyers, Philip C. Gault, Herbert A. Marshall, Doral H. Hawks, Turner M. Murrell* and *Wm. Carl Zimmerman*, all of Topeka, and *J. E. Schroeder, Lee E. Weeks, Leonard O. Thomas, J. D. Lysaught, Robert H. Bingham* and *Ervin G. Johnston*, all of Kansas City, were with him on the briefs for the appellant.

*Charles L. Davis, Jr.*, of Topeka, argued the cause, and *Howard A. Jones, William E. Haney* and *George B. Trubow*, all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a negligence action for damages for personal injuries sustained by the plaintiff as a passenger in an intersection collision between two automobiles in Wyandotte County, Kansas. The plaintiff appeals from a verdict for the defendant and from the overruling of her post-trial motions specifying various trial errors.

On the 25th day of September, 1955, at approximately 5:00 p. m., at the intersection of 38th Street and State Avenue, just west of the city limits of Kansas City, Kansas, the plaintiff, Elizabeth L. Kreh, was riding as a pasenger in an automobile being operated by her husband, Louis Kreh, when it became involved in the collision with the defendant. State Avenue, which is also U. S. Highway 24 and 40, is marked into four driving lanes, but is not a divided highway. Rain was falling at the time of the collision, and the intersection was controlled by traffic lights.

Briefly stated, the Kreh automobile was traveling east on State Avenue and made a left-hand turn at the intersection immediately in front of the defendant's automobile approaching from the opposite direction on State Avenue.

The plaintiff testified there were two automobiles ahead of them proceeding in the same direction. Her husband brought the automobile to a stop behind these two vehicles which were stopped in obedience to a red traffic light at the intersection in question. These two automobiles ahead of the plaintiff turned left on 38th Street. She testified her husband again gave a signal for a left turn and continued the signal until his vehicle reached the center of the intersection, where her husband again stopped the automobile. At that time she saw the defendant's automobile approximately a block away and her husband started to turn the corner left. She looked into 38th Street and then looked again to the east and saw the defendant's automobile approaching at full speed. At that time it was "close to fifty feet away" and she "hollered" to her husband "Watch that car." When the plaintiff's husband looked at her the collision occurred almost immediately.

On cross examination the plaintiff testified that her husband had completed his turn and was on 38th Street when the defendant struck the automobile in which the plaintiff was riding after it was headed due north and clear of the intersection. She estimated the speed of the defendant at 50 or 60 miles per hour.

The deposition testimony of the plaintiff's husband was admitted into evidence. His testimony was similar to that of the plaintiff except as hereafter noted. He testified that he saw the defendant's west-bound automobile while he was stopped near the center of the intersection; that it was at least 300 feet east at that time; that he could not estimate the defendant's speed when he first saw him because he was about 300 feet off, but he assumed the defendant's speed to be 20 miles per hour at that time. He formed a later opinion when he saw the defendant coming at a terriffic speed, which he estimated to be at least 50 miles per hour.

Both the plaintiff and her husband testified that the parties were taken before a justice of the peace following the collision and the justice asked the defendant how the collision occurred. They both related that the defendant said he was watching some other automobiles and did not see the automobile in which the plaintiff was riding until his (the defendant's) wife told him that there was a man turning. He said he was watching two other automobiles which had gotten across and was trying to keep up with them; that he was in charge of some children from the Sunday School at Silver Lake, Kansas, and that they had had a picnic at Swope Park in Kansas City.

The testimony of the justice of the peace confirmed the testimony given by the defendant in his court that he did not see Mr. Kreh's automobile until called to his attention by his wife.

A patrol officer with the Wyandotte County Sheriff's Patrol investigated the accident and testified that the accident occurred "about even with the curb or the north edge of the pavement." He related that the Kreh automobile was making a left-hand turn and was damaged on the right side at approximately the front door. Neither of the automobiles left any skid marks at the intersection. He further related statements made by the defendant to the effect that the defendant was in charge of a Sunday School or a church group and that "one of them was lost." He testified:

"Q. Did he tell you anything further that you recall?

"A. I recall he said he didn't see the car he hit, he said he was looking in the back to see if the cars were following him or caught up with him.

"Q. Did he say he had his head turned around?

"A. Looking through the rear-view mirror.

"Q. Did this man, I will ask you if he told you what first called his attention to the Kreh automobile?

"A. He said he heard his wife scream and looked up and the car was right in front of him."

Another witness who was an officer employed by the Wyandotte County Sheriff's office testified concerning his investigation of the accident. He gave the location of the accident as the northeast corner of the intersection. With reference to the north edge of State Avenue the point of impact was said to have occurred "To the extreme north to the curb line at the edge of the what would be State Avenue, the curb line at the north edge." He further related there were no skid marks. He also related statements of the defendant to the effect that the defendant was looking around for a car that was lost that was supposed to be following him.

The defendant testified that he resided in Silver Lake, Kansas, and that his wife and son were riding with him on the date in question at the time of the collision. His daughter was riding in a car ahead. His family and a Sunday School class had been to Kansas City and had visited Swope Park and other places. There were three other cars in the group besides his own. His capacity was that of a chaperon. They had previously stopped at a drive-in lunch on State Avenue and at that time all cars were together. He related that the other cars all left first and that one of the cars was still in sight at the time of the collision. He testified this other car was approximately one-half block ahead of him and passed right through the green light headed west. Confronted with statements made by the other witnesses the defendant denied that any of the other cars in the group were lost or that any of them were behind him.

The defendant further testified that as he got into the intersection and approached near the middle a car swerved from one of the east-bound lanes into the lane in which he was driving. His wife said "That fellow is going to turn." She made that statement before or about the same time that he saw the vehicle. Prior to that time he had not specifically noticed this particular automobile. He testified at that time the traffic from the west was heavy and that no other cars turned left ahead of this car; that he did not see Mr. Kreh give any arm signal for a left turn; that the Kreh automobile made an arc from the south lane which "had kind of a leaning attitude as it made a turn to the north." The defendant stated that it was his intention to proceed west through the intersection; that immediately prior to the impact he was traveling at 25 miles per hour; and that he had been driving that

same speed prior to the collision. The defendant estimated the speed of the Kreh automobile at 10 miles per hour during the turn.

He drew a diagram giving his description of the accident in which he showed that from the time he first saw the Kreh automobile he traveled about one-third of his car length. In subsequent testimony he conceded this was incorrect in view of the speeds of the two vehicles and the distance the Kreh automobile traveled before the impact. He also admitted telling the justice of the peace that he did not see this turning automobile until it was called to his attention by his wife. He admitted giving a statement to the plaintiff's attorney as follows:

"*I did not see the car with which I collided until I was halfway through the intersection.*" (Emphasis added.)

The defendant, Andrew Wayne Trinkle, further admitted *this was still his recollection.* He further said it was still his recollection that his car stopped almost immediately headed the same direction (west) and the other car stopped "almost immediately and was facing generally north."

The defendant's wife, Dora Lee Trinkle, testified her husband was driving between 20 and 25 miles per hour along State Avenue; that as they approached the intersection, she saw the car turning and "hollered to her husband and at that time the car was in front of them"; and that she did not see any arm signal from the Kreh automobile. She admitted making a statement to the plaintiff's attorney, who made no unfair suggestions to her, concerning her knowledge of the accident. This statement was recorded by the attorney and was introduced into evidence. A portion of it states:

"I don't know which lane we were traveling in, however, *I never saw the other car until it was in front of us. At this time we were about 15 feet from this other car* and shortly thereafter I felt the brakes go on and knew my husband had applied the brakes." (Emphasis added.)

The following special questions, pertinent to this appeal, were submitted by the court and answered by the jury as follows:

"1. Do you find that the defendant committed any act or acts of negligence which were the proximate cause of the accident?

"Answer: No.

"3. Do you find that plaintiff committed any act or acts of negligence which contributed to cause any injuries which she may have sustained?

"Answer: No.

"5. Was the collision the result of an unavoidable accident?

"Answer: Yes.

"6. How far was the Trinkle automobile from the Kreh automobile when the latter started the turn to the left?

"Answer: 25 feet.

"7. Do you find plaintiff sustained any permanent injuries as a result of the collision?

"Answer: No."

Judgment was entered on the verdict for the defendant for costs. The plaintiff's motion for a new trial, motion for judgment notwithstanding the verdict and motion to set aside answers to special questions were overruled. The plaintiff thereupon duly perfected an appeal specifying as error the questions hereinafter considered.

The position taken by the plaintiff is that the evidence clearly showed the defendant was guilty of negligence as a matter of law. In her motion for judgment notwithstanding the verdict the plaintiff sought judgment in her favor on the question of liability and for a new trial on the question of damages alone. The plaintiff also moved the answer to special question No. 1, finding that the defendant did not commit any act or acts of negligence which were the proximate cause of the accident, and the answer to special question No. 5, finding that the collision was the result of an unavoidable accident, be set aside.

On the record here presented we cannot say the defendant was guilty of negligence as a matter of law.

The plaintiff's principal contention is that the giving of an instruction on unavoidable accident was erroneous under the circumstances of this case. Among the instructions the trial court gave instruction No. 12 which was objected to by the plaintiff. It reads:

"If you find from the evidence in this case that the collision in question here was an accident against which ordinary care on the part of the parties could not have guarded and was not due to the negligence of either of the parties, then neither party could be responsible to the other in this case. Accidents may and often do happen for which no one is to blame, and for which no liability exists. If the collision testified to in this case was an accident of that sort, then neither party can recover against the other, and your verdict should be for the defendant."

The motor vehicle cases which deal with "accident" instructions, whether literally instructions on "accident," "mere accident," "pure accident," "unavoidable accident," or of an essentially similar character, are in conflict and to some extent they are in confusion in this country, particularly in regard to when the instruction may properly

be given, or is required to be given. It may also be said the law in this jurisdiction is not completely settled as to when the instruction may properly be given, or when it must be given.

Logically, a "mere accident," or an "unavoidable accident," or an event of the same nature however designated, is *an occurrence not proximately caused by the negligence of any person.* This in motor vehicle cases must ordinarily mean, at least, a misadventure occurring without negligence of the plaintiff or the defendant, or the driver of the vehicle of either. On this basis, if mere logic is pursued as a test for determining when an accident instruction of any sort is appropriate, it would follow that a sufficient foundation for the instruction exists when from the evidence the jury could reasonably conclude that there was neither negligence nor contributory negligence.

On the basis of the foregoing definition, certain types of cases are in their nature not appropriate for the instruction. Such case is presented where it is evident that there *must have been negligence* on the part of the defendant or of the plaintiff or of both of them. Ordinarily, in intersectional collision cases there is no possibility of mere accident or unavoidable accident requisite to the instruction.

Turning now to our own decisions, we find a recent definition of an "unavoidable accident" stated in *Knox v. Barnard,* 181 Kan. 943, 317 P. 2d 452, as follows:

"Generally speaking, as applied to automobile negligence cases, the term 'unavoidable accident' excludes and repels the idea of negligence, and refers to one which is not occasioned in any degree, either directly or remotely, by the want of such care or prudence as the law holds every person bound to exercise—that is, an occurrence which is not contributed to by the negligent act or omission of either party. In one sense, the term is synonymous with 'mere accident' or 'pure accident,' which imply that the accident was caused by some unforeseen and unavoidable event over which neither party had control." (Syl. ¶ 3.)

The terms "mere accident" or "pure accident" were said in *Meneley v. Montgomery,* 145 Kan. 109, 113, 64 P. 2d 550, to be used when it is desired to repel the idea of negligence, and are equivalent to the words "not by defendants' negligence."

These two definitions standing alone point to confusion. Under the definition in *Meneley,* if literally interpreted and logically applied, a defendant could rightfully insist on the instruction if there was any evidence from which a jury might find that he was not guilty of negligence. Generally, until the past few years, this has

been the practice on the part of trial courts concerning the giving of the "unavoidable accident" instruction.

Under the definition in *Knox v. Barnard,* supra, (quoted or paraphrased with approval in *Schmid v. Eslick,* 181 Kan. 997, 317 P. 2d 459; and *Carlburg v. Wesley Hospital & Nurse Training School,* 182 Kan. 634, 323 P. 2d 638), if logically applied, the instruction would be improper unless the jury could reasonably conclude that there was neither negligence nor contributory negligence.

It is significant to note that no decision in this state has held the refusal to give the unavoidable accident instruction was reversible error.

In *Knox v. Barnard,* supra, the defendant argued he was entitled to an instruction on his theory of the case, and he further argued the evidence showed the collision to be unavoidable so far as he was concerned. The question was raised by the defendant in his pleadings, but the trial court refused to instruct the jury on the defendant's theory of unavoidable accident. While it was conceded that the defendant was entitled to an instruction on his theory of the case, citing *In re Estate of Erwin,* 170 Kan. 728, 735, 228 P. 2d 739, this court held that *the evidence* did not justify the giving of an instruction on unavoidable accident. The court said:

".  .  . A careful examination of the evidence convinces us that as to Barnard it did not present a question of unavoidable accident, but rather, *a question of his negligence in operating his truck in the manner shown under the existing conditions and circumstances."* (p. 953.) (Emphasis added.)

It must also be noted in *Knox v. Barnard,* supra, the court made reference to the definition in the *Meneley* case and after defining an unavoidable accident as above quoted (citing 65 C. J. S., Negligence, § 21, beginning at page 429, as authority) stated in the opinion:

".  .  . that where an accident is caused by negligence there is generally no room for the application of the doctrine; that in order to bring a case within the rule of unavoidable accident it is not sufficient that the injury should have been inevitable or unavoidable at the time of its occurrence, for one who by his own negligence has created, brought about, or failed to remedy a dangerous condition or situation is liable for a resulting injury to another, although, in view of the condition or situation which existed at the time, the injury could not have been prevented, *and that one seeking to avail himself of the protection of the rule must show that he himself was in no way to blame for the happening.* It is further said that a case is not brought within the rule by the fact that an injury is partly attributable to inevitable accident, and that one is liable for the combined consequences of an inevitable or unavoidable accident and his own negligence." (p. 952.) (Emphasis added.)

The italicized portion of the foregoing statement would seem to indicate that the court has compromised the logical application of the definition of an unavoidable accident stated in the opinion.

In *Meneley v. Montgomery*, supra, the defendant requested an unavoidable accident instruction which the trial court refused. It was there recognized that both the question of the defendants' negligence and that of contributory negligence on the part of the plaintiff were questions for the fact-finders under proper instructions. But the court held, in spite of the definition to which reference has heretofore been made and under the circumstances just indicated, that it was not error for the trial court to reject such instruction, stating:

"This presented not a question of pure or unavoidable accident but *a question of appellants' negligence in attempting to negotiate the hill on the south side of the road, in view of all the dangerous circumstances.*" (p. 113.) (Emphasis added.)

It is observed that in both the *Knox* and *Meneley* cases the jury returned a verdict for the plaintiff *finding the defendant in each case guilty of negligence* and the matter was first presented to this court on appeal after final judgment.

An analogous situation is presented in *Ripley v. Harper*, 181 Kan. 32, 309 P. 2d 412. The court was considering a typical intersection collision and one ground of error claimed by the appellant was the refusal of the trial court to submit a special question asking whether the collision was the result of an unavoidable accident. It was there said:

"We find nothing in the record to indicate anything other than that *the collision was the result of negligence on the part of either or both parties involved.* There was no evidence to justify the submission of the question, and it was not error to refuse to give it." (p. 34.) (Emphasis added.)

Another case which did not involve an automobile collision also concerned the refusal of the trial court to give an unavoidable accident instruction in *Carlburg v. Wesley Hospital & Nurse Training School*, supra. There the plaintiff was a patient in a hospital for a series of operations and while still under the influence of an anesthetic was moved from the recovery room to a room which he was to occupy as a patient. It was alleged the employees and attending nurses neglected to place the sideboards on the bed in an upright position to protect and prevent the plaintiff from falling out of bed, and that by reason thereof the plaintiff fell from the

bed and injured himself. Upon trial the jury returned a verdict for the plaintiff which this court affirmed, and with respect to the refusal of the trial court to give the unavoidable accident instruction, it was said:

"Carlburg, who at the time of the accident was in at least a semi-conscious condition, was under the complete control of the hospital, its employees and attendants. *There was nothing unavoidable about this accident. Either the hospital was negligent in its duty to Carlburg or it was not and the court so instructed the jury.*" (p. 638.) (Emphasis added.)

On the basis of the foregoing authorities it would therefore seem that a trial court would be well advised not to give an unavoidable accident instruction unless from the evidence the jury could reasonably conclude that there was neither negligence nor contributory negligence, where quite plainly the instruction is peculiarly appropriate.

We shall next turn to the cases in this jurisdiction in which an unavoidable accident instruction was given to the jury in an effort to ascertain when the giving of an unavoidable accident instruction is proper.

The propriety of giving an unavoidable accident instruction was not challenged in *Engle v. Bowen*, 122 Kan. 283, 251 Pac. 1108, where the defendants charged error on the part of the trial court in refusing to give an instruction defining an unavoidable accident. The trial court did, however, include in its instructions a definition of the term "pure accident" which it defined as one "for which no one was responsible." Upon the facts and circumstances presented by the case, this was held to be an appropriate and sufficient definition of the term "unavoidable accident."

*In re Estate of Erwin*, 170 Kan. 728, 228 P. 2d 739, was a case in which an unavoidable accident instruction was given to the jury by the trial court. There two vehicles traveling on a highway which had been recently resurfaced with white chat or stone collided head-on. The highway was very dusty. The only surviving witness testified that a vehicle which had passed immediately prior to the collision "at a speed of about sixty miles an hour, stirring up the dust so that he could not see anything; that the dust blinded 'us'; 'about a split second after this car passed us we collided'." (p. 732.)

The jury found the collision to be the result of an accident as defined by the court's instructions and returned a verdict for the defendant which was affirmed on appeal. *There the plaintiff made*

*no complaint that the instruction was inherently wrong or that the definition of "accident" was erroneous,* but objected simply on the ground that the evidence was such the instruction should not have been given. The court there said after the instructions were given it still remained open for the jury to determine whether Lester Blevin's version of the testimony was to be fully credited, or whether the jury might find, under all the circumstances, Noel Erwin was not at fault, "and not being at fault, the collision might be termed an accident. What the jury might eventually conclude has nothing to do with the correctness of the instruction."

Where no objection is made to an instruction on unavoidable accident such instruction becomes the law of the case unless it is erroneous as a matter of law. *(Stephenson v. Wallis,* 181 Kan. 254, 311 P. 2d 355.)

Upon the facts and circumstances presented in *Schmid v. Eslick,* supra, it was held reversible error to give the unavoidable accident instruction. There an automobile collision resulted between two vehicles proceeding in the same direction, the one driven by the defendant having proceeded only 25 feet after turning onto the highway from an intersection. The plaintiff was the passenger in the other automobile which struck the defendant's vehicle from the rear. It was dark when the collision occurred and the headlights of both automobiles were illuminated. The jury returned a verdict for the defendant, but in answer to special questions it found the injuries sustained by the plaintiff were the result of an "accident" as defined in the court's instructions, and also found the drivers of both vehicles "or either of them" could have avoided the collision by exercising ordinary care. In the opinion the court dealt at some length with the doctrine of joint enterprise and concluded that it was erroneous for the trial court to instruct the jury on the question of joint enterprise, holding:

"Where the evidence is undisputed and the facts and circumstances clearly show a passenger did not have equal privilege and right to control the operation of the vehicle, the issue of joint enterprise becomes a question of law for the court's determination and should not be submitted to the jury as a question of fact." (Syl. ¶ 6.)

The trial court there instructed the jury on all phases of the law of negligence appropriate to the issues raised by the pleadings *and to the facts and circumstances established by the evidence of both parties.* Under the facts and circumstances disclosed by the

record in that case, including the circumstance that it was error to instruct on the question of joint enterprise, it was held reversible error to give the unavoidable accident instruction on the ground that it was inconsistent with the evidence. It was there said:

". . . The term 'unavoidable accident' implies that the injury occurred *without the negligence of either party and could not have been prevented by their exercise of ordinary care and prudence* . . ." (p. 1006.) Emphasis added.)

For the above statement the court cited various sections of C. J. S. and quoted Syllabi ¶¶ 3 and 4 in *Knox v. Barnard,* supra.

Two other cases not related to an automobile collision deserve mention. In *Bradley v. Conway Springs Bottling Co.,* 154 Kan. 282, 118 P. 2d 601, the plaintiff was injured by a bottle of Pepsi-Cola which exploded in her hand as she was putting it in the icebox. The action was alleged under the doctrine of *res ipsa loquitur* and the court upon the facts and circumstances presented by the evidence summarily stated there was no room in the case for the application of the doctrine of unavoidable accident.

In *Tawney v. Railway Co.,* 84 Kan. 354, 114 Pac. 223, the plaintiff was injured while riding in a buggy drawn by a horse when the engine of a railroad train backed into the buggy. The jury returned a general verdict for the plaintiff. Since the specific findings of the jury exonerated the defendant from all acts of negligence alleged, the judgment was not permitted to stand. The court stated:

". . . The jury found that the plaintiff was not guilty of contributory negligence. Conceding that she was not, this leaves a situation where the law declares that the injuries were caused by what was, under the circumstances, an unavoidable accident . . ." (p. 356.)

It may be said, after a careful review of the foregoing decisions, that an "unavoidable accident," or an event of the same nature however designated, is generally recognized as an occurrence not proximately caused by the negligence of any person (This is the substance of the definition given in *Knox v. Barnard,* supra, Syllabus ¶ 3); and that an attempt has fairly been made by the court to pursue logic as a test under this definition to determine when an "accident" instruction of any sort is appropriate.

In an ordinary negligence action the plaintiff must prove that the injury complained of was proximately caused by the defendant's negligence, and the defendant under a general denial may show

any circumstances which tend to militate against his negligence or, if negligent, its causal effect. The mere fact that the defendant pleads in his answer the defense of "unavoidable accident" does not entitle him to an instruction on the doctrine of unavoidable accident.

If the so-called defense of unavoidable accident is nothing more than a denial by the defendant of negligence, or a contention that his negligence, if any, was not the proximate cause of the injury, the pleading on this point is immaterial, since an instruction to the jury under these circumstances would inform the jury that the question of unavoidability or inevitability of an accident arises only where the plaintiff fails to sustain his burden of proving that the defendant's negligence caused the accident. The instruction under these circumstances would serve no useful purpose, since the ordinary instructions on negligence and proximate cause sufficiently show that the plaintiff must sustain his burden of proof on the issues of negligence in order to recover.

Thus, the allegation in the defendant's answer stating the collision was the result of an unavoidable accident which prudent care on his part was unable to prevent, would not, standing alone, entitle him to an instruction. The instruction given must be germane to the issues raised by the pleadings *and must be limited to those issues supported by some evidence.* (*Schmid v. Eslick,* supra, including authorities cited therein; *Knox v. Barnard,* supra; and *In re Estate of Erwin,* supra.)

Where the evidence before the jury is confined to the issues of negligence, an instruction which informs the jury that the law recognizes what is termed an "unavoidable or inevitable accident" may give the jury the impression that unavoidability is an issue to be decided, and that if proved, it constitutes a separate ground of non-liability of the defendant. They may then be misled as to the proper manner of determining liability, that is, solely on the basis of negligence and proximate causation. The instruction under these circumstances is not only unnecessary, but it is confusing. This was illustrated by the special findings of the jury in *Schmid v. Eslick,* supra.

It would therefore appear to be the better practice, where the evidence is confined to issues of negligence, for the trial court to eliminate any reference to "unavoidable accident" in summarizing the pleadings of the defendant for the jury in its instructions since

the defendant's pleadings on "unavoidable accident" have become immaterial.

A determination whether, in a specific instruction, the probable effect of the instruction has been to mislead the jury and whether the error has been prejudicial so as to require reversal depends upon all the circumstances of the case, including the evidence and the other instructions given. No precise formula can be drawn. (Reference is made to a recent extended annotation on "Unavoidable Accident Instruction" in 65 A. L. R. 2d 1, covering 138 pages.)

In the case before us we are confronted with an intersection collision where the issues between the parties upon which there was evidence is confined to negligence. Upon the evidence presented by the record herein it was improper to give the unavoidable accident instruction and to submit a special question upon it.

The trial court instructed the jury on negligence, proximate cause, contributory negligence and various other instructions commonly given in automobile collision cases, including the applicable statutes. Most of the instructions requested by the plaintiff were given by the trial court in substance. But it refused to instruct the jury that there could or may be more than one proximate cause of an injury. This instruction was requested by the plaintiff and the refusal of the trial court to give it was error.

The trial court also refused to give the following requested instruction:

"VIII.

"You are instructed that if you find and believe from the evidence that the plaintiff sustained injuries as a result of the concurrent negligence of the defendant, Andrew Wayne Trinkle, and of Louis Kreh, the operator of the automobile in which plaintiff was riding, which concurrent negligent acts or omissions caused the injuries to plaintiff, then the defendant, Andrew Wayne Trinkle, would not be excused from liability for his negligence by reason of the negligence of another. In other words, if you believe from the evidence that the injuries sustained by the plaintiff were the result of the concurrent negligence of two parties, neither of said parties can escape liability for his own negligence by showing the negligence of the other. In this connection, you are instructed that where a person is injured by the joint or concurrent negligence of two operators of motor vehicles, he does not have to show that one operator was more or less negligent than the other and it is no defense on the part of either to show that one was more negligent than the other."

Since the plaintiff was the passenger in the automobile driven by her husband and her husband's negligence could not be imputed to her, this was an essential instruction to the plaintiff's case. In

fact, it was the theory upon which plaintiff sought recovery and upon which the case was tried. (See *Knox v. Barnard,* supra, and *In re Estate of Erwin,* supra.) Under the circumstances it was error for the trial court to refuse this instruction, or one of similar import.

One other specification of error deserves attention. Over the plaintiff's objection Exhibit 23 was offered in evidence. This exhibit was identified by Dr. Joseph Gendell as an X-ray report made by another doctor at the medical center. The basis of the plaintiff's objection to the exhibit was that the doctor making the report was not present to testify and, therefore, could not be cross-examined, and for the further reason that the report was hearsay. These objections were valid and the Exhibit should have been rejected.

It is apparent this Exhibit may have been particularly damaging to the plaintiff, since the jury found the plaintiff sustained no permanent injuries as a result of the collision. The nature of the Exhibit was to confirm this finding, but not properly having been admitted into evidence, it was prejudicial to the plaintiff.

Upon all the facts and circumstances presented by the record in this case, the plaintiff is entitled to a new trial on all issues by reason of the trial errors heretofore discussed.

The judgment of the trial court is reversed with directions to grant a new trial in accordance with the views herein expressed.

PRICE, J., dissents from paragraph 3 of the syllabus and the corresponding portion of the opinion.