No. 42,084

JOYCE PAPH, *Appellant,* v. TRI-STATE HOTEL CO. INC., *Appellee.*

(360 P. 2d 1055)

Opinion filed April 8, 1961.

*Robert C. Foulston,* of Wichita, argued the cause, and *George B. Powers; Carl T. Smith; John F. Eberhardt; Stuart R. Carter; Malcolm Miller; Robert N. Partridge; Robert M. Siefkin; Richard C. Harris; Gerald Sawatzky; Donald L. Cordes,* and *Robert L. Howard,* all of Wichita, were with him on the briefs for the appellant.

*William Porter,* of Wichita, argued the cause, and *Getto McDonald; William Tinker; Arthur W. Skaer; Hugh P. Quinn; Alvin D. Herrington; Darrell D. Kellogg,* and *Richard T. Foster,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This was an action to recover damages for personal injuries received by the plaintiff from a fall ·in a coffee shop. A jury trial resulted in a general verdict and subsequent judgment for the defendant. The plaintiff appeals and brings the case to this court under specifications of error charging that the court committed error in giving an instruction on unavoidable accident over her objection and in overruling her motion for a new trial.

The plaintiff commenced the action on December 6, 1959, against the Tri-State Hotel Co., Inc. and its employee, Eleanor R. Mitchell, as defendants. Just prior to the trial she dismissed as against the employee, leaving the corporation as the only defendant. For that reason no further reference will be made in this opinion to Mrs. Mitchell as a defendant.

No controversial issue respecting the sufficiency of the pleadings exists in this case. However, such pleadings define the issues as joined by the parties prior to the trial and their allegations, so far as material to those questions, should be noted. When reviewed in the manner and for the purpose indicated it may be stated:

The petition alleges that plaintiff was just beginning to sit down in a chair in the coffee shop when defendant's employee, Mrs. Mitchell, negligently pulled the chair away and out from under plaintiff, and thus caused her to fall down on the floor and sustain her injuries. It then charges that defendant was negligent in removing such chair, through its employee; that defendant had not properly instructed its employee; that the defendant employed and retained such employee after it was apparent she was physically incapacitated by reason of impaired vision and that her conduct would cause injury to customers; and that defendant employed incompetent managers and supervisors.

The defendant's answer denies generally all allegations of the petition, charges that if plaintiff was injured her injury was proximately caused by her own negligence, and asserts that the accident was unavoidable.

The reply denies all allegations of the answer which in any way controverts the allegations of the petition.

The facts with respect to the pertinent conditions and circumstances existing just prior to the involved accident, as disclosed by the evidence presented at the trial, are not controverted and may be stated in highly summarized fashion.

On January 3, 1957, the defendant corporation was operating the Broadview Hotel Coffee Shop, located in Wichita. The shop had a capacity of 175 people and during each noon hour it served about 700 to 800 people. In handling these customers the coffee shop had one hostess, Mrs. Mitchell, and ten waitresses. The floor plan of the shop is not clear from the record. However, it appears there were coat racks along the west wall of such shop and tables and chairs, which were uniform in size, throughout the dining room. The tables were approximately three feet square.

At 12 P. M., on the date last above indicated, the plaintiff, accompanied by four other persons, entered the coffee shop for the purpose of having lunch. Mrs. Mitchell, the hostess, greeted them and, after ascertaining their desires as to a seating arrangement, led them to a place near the west wall of the coffee shop. Close to this west wall there were two tables, each of which accommodated two people. The hostess pushed these two tables together and moved them to the south in order to place another table next to them. Thereafter she walked to the east where more tables and

chairs were located. There she picked up a chair, carried it back, and placed it near the west tables.

Events transpiring after the hostess placed the chair near the two west tables are in dispute as to various particulars. On that account they will be described in a summarized recital of pertinent portions of the testimony of witnesses who testified at the trial.

The plaintiff testified that she and one of her associates, Carl Smith, pushed a table, which was located approximately three feet to the east of the two west tables, along the floor until it was even with the other two tables. She also testified that she then turned around and saw another associate, Mrs. Oatsdean, hanging up her coat; that at the same time, she saw her chair and had touched it with her legs; that thereupon she turned around and put her hands flat on the table and said "Well, I guess this is real service."; and that she looked at her chair again as she sat down but the chair was not there and she fell to the floor sustaining certain back injuries, which she described during the course of her testimony.

Plaintiff's associate, Carl Smith, testified that he and the plaintiff pushed a table from the east side and moved it to the west side, a distance of approximately four or five feet; that there was a chair placed in a seating position where the table, which he and plaintiff were moving, was to be; that the plaintiff was backing in on the west side of the table and that he was walking forward on the east side of the table; that at that time the hostess was behind the chair in which the plaintiff was going to sit; and that as they got the table lined up with the other tables, the plaintiff sat down. He further stated "The chair was there at the time we put the table there. Joyce (plaintiff) sat down and the chair was moved." He also testified that immediately before the accident occurred the hostess was looking toward the door leading into the coffee shop and that she was not looking at the plaintiff.

The hostess, Mrs. Mitchell, testified as a witness for both the plaintiff and defendant. She conceded that she had a glaucoma condition which affected her close vision but stated she did not think there were occasions when people could walk by her closely without her observing them. She admitted moving the chair behind the plaintiff just before the accident happened and in explanation of her action said: "She (plaintiff) was backing into position carrying the table, and the chair was in position. I realized she might fall and hurt herself so I pulled the chair back when she was two

or three feet from the table. I didn't see her look around and I was looking at her all the time." Mrs. Mitchell also testified that when the plaintiff first looked back, which was at the time Mr. Smith and plaintiff commenced to move the table, plaintiff was seven or eight feet from the place where she sat down; that she stood watching plaintiff, who was moving fast, as she came back; and that when she reached the approximate place where the chair had been setting, plaintiff "set the table down and sat down all in one movement."

Edward H. McLeod, manager of the Broadview Hotel, testified that he had seen the entire accident and in a general way corroborated Mrs. Mitchell's testimony.

At the close of all the evidence the trial court gave the jury full and complete instructions.

It suffices to say, without further reference thereto, appropriate instructions, to which no objections were made, were given with regard to the evidence relating to negligence on the part of each of the parties.

In addition to the instructions just mentioned the court, over the objection of counsel for plaintiff, gave the jury the following instruction. It reads:

"If you find from the evidence that the injuries to the plaintiff were the result of an unavoidable accident for which no one was to be blamed, then the plaintiff cannot recover. By 'unavoidable accident' is meant an accident which could not have been foreseen and prevented by the use of ordinary diligence and care, and which resulted without fault on the part of either party."

Having outlined the issues as joined by the pleadings, detailed pertinent portions of the controverted and uncontroverted evidence adduced by the parties, and quoted the foregoing instruction given by the trial court, it can now be stated the sole issue involved on this appeal is whether, under the existing facts and circumstances, the trial court erred in giving the instruction on unavoidable accident over the plaintiff's objection.

Pointing out, that before the above quoted instruction was submitted to the jury by the trial court, it was objected to for the reason that on the basis of our decision in *Kreh v. Trinkle*, 185 Kan. 329, 343 P. 2d 213, the issue of unavoidable accident did not appear to be involved, the gist of all contentions advanced by appellant is that under the facts, conditions and circumstances of record such instruction was not applicable to the evidence and its submission confused and misled the jury, prejudiced her substantial rights,

and therefore constituted error requiring the granting of her motion for new trial and reversal of the judgment.

In support of the foregoing claim of error appellant cites recent decisions of this court dealing with the propriety of giving an instruction on unavoidable accident. In two of these decisions, where judgments were rendered in the court below for the defendants (*Kreh v. Trinkle*, 185 Kan. 329, 343 P. 2d 213; *Schmid v. Eslick*, 181 Kan. 997, 317 P. 2d 459), the submission of such an instruction is held to have resulted in prejudicial error requiring a reversal of the judgments and the granting of new trials. In two others, where judgments in the lower court were for the plaintiffs (*Knox v. Barnard*, 181 Kan. 943, 317 P. 2d 452; *Carlburg v. Wesley Hospital & Nurse Training School*, 182 Kan. 634, 323 P. 2d 638), it is held that requests for such an instruction were properly denied and afforded no sound basis for the reversal of the judgments.

In the recent decisions, to which we have just referred, this court has been entirely consistent in its holdings with respect to the import to be given the term *"unavoidable accident,"* as applied to negligence cases, as well as the conditions and circumstances under which an instruction on that doctrine was neither necessary nor proper. For its conclusions with respect to both questions see *Knox v. Barnard*, supra, where it is held:

"Generally speaking, as applied to automobile negligence cases, the term 'unavoidable accident' excludes and repels the idea of negligence, and refers to one which is not occasioned in any degree, either directly or remotely, by the want of such care or prudence as the law holds every person bound to exercise—that is, an occurrence which is not contributed to by the negligent act or omission of either party. In one sense, the term is synonymous with 'mere accident' or 'pure accident,' which imply that the accident was caused by some unforeseen and unavoidable event over which neither party had control.

"Generally speaking, when an accident is caused by negligence there is no room for application of the doctrine of 'unavoidable accident,' even though the accident may have been 'inevitable' or 'unavoidable' at the time of its occurrence, and one is not entitled to the protection of the doctrine if his negligence has created, brought about, or failed to remedy a dangerous condition resulting in a situation where the accident is thus 'inevitable' or 'unavoidable' at the time of its occurrence. In other words, a person is liable for the combined consequences of an 'inevitable' or 'unavoidable' accident and his own negligence." (Syl. ¶¶ 3 and 4.)

See, also, *Schmid v. Eslick*, supra, where the *Knox* case is specifically followed and page 1007 of its opinion where ¶¶ 3 and 4 of the syllabus of that case are quoted verbatim with approval.

See, also, *Carlburg v. Wesley Hospital & Nurse Training School,* supra, (syl. ¶ 5 and page 638 of its opinion), where the *Knox* and *Schmid* cases are both cited with approval and the principles therein announced expressly repeated in summarized fashion. And see *Kreh v. Trinkle,* supra, (syl. ¶ 1 and page 336 of the opinion), where the principles announced in all three of the decisions, to which we have last referred, are summarized in substance and adhered to.

The reasons on which this court has based the conclusions announced in the foregoing decisions, and the test to be applied in determining whether the submission of an "unavoidable accident" instruction has been prejudicial so as to require reversal of a judgment in an ordinary negligence action, are well stated in *Kreh v. Trinkle,* supra, and helpful to a decision of the appellate issues involved in the case at bar. Therefore, we shall quote at some length from the opinion in that case. Limited to the subjects mentioned, it reads:

"It may be said, after a careful review of the foregoing decisions, that an 'unavoidable accident,' or an event of the same nature however designated, is generally recognized as an occurrence not proximately caused by the negligence of any person (This is the substance of the definition given in *Knox v. Barnard,* supra, Syllabus ¶ 3); and that an attempt has fairly been made by the court to pursue logic as a test under this definition to determine when an 'accident' instruction of any sort is appropriate.

"In an ordinary negligence action the plaintiff must prove that the injury complained of was proximately caused by the defendant's negligence, and the defendant under a general denial may show any circumstances which tend to militate against his negligence or, if negligent, its causal effect. The mere fact that the defendant pleads in his answer the defense of 'unavoidable accident' does not entitle him to an instruction on the doctrine of unavoidable accident.

"If the so-called defense of unavoidable accident is nothing more than a denial by the defendant of negligence, or a contention that his negligence, if any, was not the proximate cause of the injury, the pleading on this point is immaterial, since an instruction to the jury under these circumstances would inform the jury that the question of unavoidability or inevitability of an accident arises only where the plaintiff fails to sustain his burden of proving that the defendant's negligence caused the accident. The instruction under these circumstances would serve no useful purpose, since the ordinary instructions on negligence and proximate cause sufficiently show that the plaintiff must sustain his burden of proof on the issues of negligence in order to recover.

"Thus, the allegation in the defendant's answer stating the collision was the result of an unavoidable accident which prudent care on his part was unable to prevent, would not, standing alone, entitle him to an instruction. The

instruction given must be germane to the issues raised by the pleadings *and must be limited to those issues supported by some evidence.* (*Schmid v. Eslick,* supra, including authorities cited therein; *Knox v. Barnard,* supra; and *In re Estate of Erwin* [170 Kan. 728, 735, 228 P. 2d 739], *supra.* )

"Where the evidence before the jury is confined to the issues of negligence, an instruction which informs the jury that the law recognizes what is termed an 'unavoidable or inevitable accident' may give the jury the impression that unavoidability is an issue to be decided, and that if proved, it constitutes a separate ground of non-liability of the defendant. They may then be misled as to the proper manner of determining liability, that is, solely on the basis of negligence and proximate causation. The instruction under these circumstances is not only unnecessary, but it is confusing. This was illustrated by the special findings of the jury in *Schmid v. Eslick,* supra.

"It would therefore appear to be the better practice, where the evidence is confined to issues of negligence, for the trial court to eliminate any reference to 'unavoidable accident' in summarizing the pleadings of the defendant for the jury in its instructions since the defendant's pleadings on 'unavoidable accident' have become immaterial.

"A determination whether, in a specific instruction, the probable effect of the instruction has been to mislead the jury and whether the error has been prejudicial so as to require reversal depends upon all the circumstances of the case, including the evidence and the other instructions given. No precise formula can be drawn. (Reference is made to a recent extended annotation on 'Unavoidable Accident Instruction' in 65 A. L. R. 2d 1, covering 138 pages.)

"In the case before us we are confronted with an intersection collision where the issues between the parties upon which there was evidence is confined to negligence. Upon the evidence presented by the record herein it was improper to give the unavoidable accident instruction and to submit a special question upon it." (pp. 340, 341 and 342.)

Another decision, not cited by the parties, but nevertheless supporting many of the conclusions reached by this court in the foregoing decisions, is *Meneley v. Montgomery,* 145 Kan. 109, 64 P. 2d 550, which reads:

"Appellants further contend the trial court should have instructed on the question of pure and unavoidable accident, as requested. The theory of the request is based on appellants' testimony the coupe was not in sight when they started around the parked truck. The request was properly denied. In 1 C. J., 393, it is said:

" ' "Mere accident" or "pure accident" are terms often used when it is desired to repel the idea of negligence, and are equivalent to the words "not by defendants' negligence." '

"Appellants' own evidence required the case be submitted to the jury. Their testimony in substance was: The road was very icy; they had a load of about fourteen thousand pounds; they shifted gears just before they started to pass around the parked truck; they were traveling only about six miles per hour when trying to pass the parked truck; the cattle truck and trailer combined were about thirty-five to thirty-six feet long; the driver accelerated the motor and caused the

wheels to spin; with the load he had and the ice on the hill, he was prevented from making any speed and he then set his brakes.

"This presented not a question of pure or unavoidable accident but a question of appellants' negligence in attempting to negotiate the hill on the south side of the road, in view of all the dangerous circumstances." (p. 113.)

After a careful review of the evidence the court has concluded there is nothing in the record presented to indicate anything other than that the accident in question was caused by the negligence of one or the other, or both, of the parties involved in the action. Moreover, in the face of that situation, it is convinced the decisions to which it has referred throughout this opinion compel a conclusion the submission of the instruction on unavoidable accident was prejudicial error which required the granting of her motion for a new trial.

It follows the judgment must be reversed with directions to grant a new trial.

PARKER. C. J., dissenting.