Mary L. KNOX, Widow, Patricia D. Knox and Barbara A. Knox, Minor Children (Robert V. Knox, Deceased, Employee), Claimants and Respondents,

v.

LAND CONSTRUCTION COMPANY, Employer and Appellant,

and

Fireman's Fund Indemnity Company, Insurer and Appellant.

No. 23262.

Kansas City Court of Appeals.

Missouri.

April 3, 1961.

William H. Sanders, Caldwell, Blackwell, Oliver & Sanders, and James M. Moore, Kansas City, for appellants.

Richard W. Mason, St. Joseph, Abe Goldman, St. Joseph, of counsel, for respondents.

MAUGHMER, Commissioner.

The Industrial Commission of Missouri modified a compensation award and the Circuit Court of Buchanan County affirmed. The employer and insurer have appealed. It does not affirmatively appear that the amount involved exceeds $15,000. Therefore, jurisdiction is with this court.

Robert V. Knox, a resident of St. Joseph, Missouri, was killed January 17, 1956, as a result of an automobile collision. The accident occurred in Marshall County, Kansas, and arose out of decedent's employment with the Land Construction Company. At the time of his death Mr. Knox was 45 years of age and his wages were in excess of $60 per week. His widow, Mary L. Knox and two minor daughters, Patricia and Barbara, survive him.

On March 13, 1956, an "award on agreed statement of facts" was entered by a referee, Division of Workmen's Compensation. Benefits ·thereunder (to the widow for herself and to her for the minor children) included death benefits of $12,000, payable from January 17, 1956, at the rate of $35 per week for 342 plus weeks and $400 funeral expenses. The employer, Land Construction Company, and the insurer, Fireman's Fund Indemnity Company, appellants here, paid the $400 funeral allowance, $397.85 in medical aid, and $3,800 (108.57 weeks) in weekly death benefits, aggregating $4,597.85. No further payments under the award have been made.

In March, 1956, Mary L. Knox, widow, through her attorneys, Richard W. Mason, St. Joseph, Missouri, and R. F. Galloway, Marysville, Kansas, filed suit in the District Court of Marshall County, Kansas, asking $25,000 damages under the Kansas Wrongful Death Statute, G.S.1949, 60–3201 et seq. Trial resulted in a verdict and

judgment in the amount of $22,500. On appeal the Supreme Court of Kansas affirmed. Knox v. Barnard, 181 Kan. 943, 317 P.2d 452. When this judgment was paid it amounted, with accrued interest, to $23,896.88, which amount is for our purposes the "amount of recovery effected by dependent against a third person." This third party litigation was handled entirely by Mrs. Knox and her attorneys. Neither the employer nor the insurer, nor their attorneys, took any part therein although they knew the litigation was in progress and their claim agent from time to time talked with Mr. Mason about it.

The full amount of the judgment was paid to Mrs. Knox and her attorneys. Her chief counsel and fellow resident of St. Joseph, Missouri, Mr. Richard W. Mason, undertook allocation and distribution of the $23,896.88. By his letter of January 13, 1958, Mr. Mason advised the insurer that division of the recovery had been made as follows:

| | |
|---|---|
| Trial and traveling expense in connection with Kansas suit, | $ 626.81 |
| Fifty percent attorneys' fees ($2500 was paid to Kansas associate counsel) | $11,635.00 |
| Balance to Mrs. Mary L. Knox, dependent, | $11,635.07 |
| Total, .................. | $23,896.88 |

In this letter Mr. Mason further calculated the insurer's share in the recovery to be $5,137.93, which he treated as a credit on future compensation payments to the extent of 165¾ths weeks. Apparently there was no response from the insurer and on October 14, 1958, and again on April 22, 1959, Mr. Mason wrote letters to Fireman's Fund Indemnity Company, urging resumption of compensation payments to Mrs. Knox. Under date of October 28, 1959, counsel for the employer and insurer filed with the Industrial Commission of Missouri a motion to modify and change the award for death benefits which had been entered on March 13, 1956. Therein it was alleged "that there is a dispute between the dependents and the employer and insurer as to the

proportionate share of expenses to be charged against the employer and insurer and the amount of a reasonable attorney fee to be allowed and the amount to be credited to the employer and insurer on said award."

On February 29, 1960, the Commission entered its order modifying the original award. This order recited the recovery of $23,896.00 and then ruled: (1) that appellants' interest in the recovery is in that proportion which the original total award ($12,797.85) bears to the total amount recovered ($23,896.00) or 53.56 percent; (2) the trial expense of $626 and the attorney fees of $11,635 (50 percent contingent) were fair and reasonable, and approved deduction of same, leaving a balance or net recovery of $11,635.07; (3) that the employer and insurer are entitled to be credited with 53.56 percent of the net recovery ($11,635.07) or $6,231.71, which is the equivalent of 178.05 weeks of compensation at $35 per week; (4) that to this 178.05 weeks, shall be added 108.57 weeks which have been paid, making a total of 286.62 weeks paid by either cash or credit; (5) that the employer and insurer shall be absolved from further liability until July 17, 1961, this being 286.62 weeks after the employee's death on January 17, 1956. That on July 17, 1961, the employer and insurer shall resume payment of death benefits for 55.95 weeks in final and complete satisfaction of the award. We note that 56 weeks of benefits at $35 per week, totals $1,960. This amount, the Commission ruled, was still owed to dependents.

The judgment of the Circuit Court of Buchanan County affirmed this modified award of the Commission. On appeal the employer and insurer allege there was no substantial evidence to justify an allowance of a 50 percent attorney fee. They assert further that the balance of recovery was not apportioned in accordance with the statutory requirement of Section 287.150, V.A.M.S. (as amended, Laws 1955, p. 597), that the Commission erred in treating all of the appellants' share in the recovery as

advance payments, rather than paying direct to them "the amount due the employer" and that it was error not to treat all of the recovery paid to dependent as advance payments of future installments of compensation.

Originally most states passed rather restricted Workmen's Compensation Laws. Legislatures and courts seemed fearful of possible double recovery and had no desire to promote litigation. It is elementary that a claimant should not be allowed to keep the entire amount both of his compensation award and his common law damage recovery. The obvious disposition of the matter is to give the employer so much of the negligence recovery as is necessary to reimburse him for his compensation outlay and give the employee the excess. This is fair to everyone; the employer who, in a fault sense, is neutral, comes out even; the third person pays exactly the damages he would normally pay, which is correct, since to reduce his burden because of the relation between employer and employee would be a simple windfall to him, which he had done nothing to deserve; and the employee gets a fuller reimbursement for actual damages sustained than is possible under the compensation system alone. However, in recent years as our experience with Workmen's Compensation Laws has increased, there has been a tendency in many states to broaden their laws with respect to distribution of the proceeds from third-party actions. In Larson's Workmen's Compensation Law, Vol. 2, par. 74.-31, p. 209, we find this statement: "Under most subrogation statutes the payor of compensation gets reimbursement for the amount of his expenditure as a first claim upon the proceeds of the third-party recovery, and the employee gets the excess. Some of the leading compensation states are beginning to vary this slightly. In Massachusetts the employee gets only four-fifths of the excess, presumably on the theory that the subrogee will thereby have a greater incentive to sue or settle for more than the bare amount necessary to cover the compensation expenditures. In New York the employee gets the entire excess over the employer's compensation outlay if the employee himself is the plaintiff, but only two-thirds if the employer or insurer is the plaintiff. This gives the employee, who under the New York statute has the first opportunity to sue, a financial motivation for taking direct action against the tortfeasor; it also impels the subrogee, if the cause of action passes to him, to achieve as large a recovery as possible, and to refrain from the temptation of making an easy settlement for no more than the out-of-pocket compensation cost."

In Schumacher v. Leslie, 360 Mo. 1238, 232 S.W.2d 913, 919 (decided 1950 under the Missouri Act as it then existed) it was held that " * * * whoever, the employer or the employee, recovers against a third person tort-feasor holds so much of such recovery as in truth and in fact belongs to the other as an express trustee— the employee so see that the employer's right of subrogation is protected, and the employer to see that the employee receives any surplus after his indemnification. (citing cases)".

■ The process of allocation, division, distribution and credit of proceeds secured in recovery against a third party is provided for by Section 287.150, V.A.M.S., as amended, Laws 1955. There seems to be little doubt as to the mechanics where the recovery against the third person is made by the employer. Subsection (1), after declaring that the employer shall be subrogated to the right of the employee or dependents against such third person, and that his recovery shall not be limited to the amount payable as compensation, states: "Any recovery by the employer against such third person, in excess of the compensation paid by the employer, after deducting the expenses of making such recovery shall be paid forthwith to the employee or to the dependents, and shall be treated as an advance payment by the employer, on account of any future in-

stallments of compensation." It seems evident that where there is an employer recovery, the expenses of making such recovery shall first be paid, then the employer shall be reimbursed for the amount of compensation which he has paid, and the balance shall be paid to the employee or the dependents, and shall be treated as an advance payment on account of any future installments of compensation.

However, the Legislature saw fit to enact a separate provision where recovery against a third party is effected by the employee or his dependents. (Now subsection 3, section 287.150, V.A.M.S.). This provision, as we interpret it, offers an incentive for the employee or dependent to bring the third-party action in that he may thereby secure a greater net recovery than he will if the employer or insurer effects the recovery. This subsection, as amended in 1955, provides: "Whenever recovery against the third person is effected by the employee or his dependents, the employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery, including a reasonable attorney fee. After the expenses and attorneys fee has been paid the balance of the recovery shall be apportioned between the employer and the employee or his dependents in the same ratio that the amount due the employer bears to the total amount recovered, or the balance of the recovery may be divided between the employer and the employee or his dependents as they may agree. Any part of the recovery found to be due to the employer, the employee or his dependents shall be paid forthwith and any part of the recovery paid to the employee or his dependents under this section shall be treated by them as an advance payment by the employer on account of any future installments of compensation."

■ Appellants' first point has to do with the reasonableness of the 50 percent attorney fee allowance. The Commission has authority to pass on this matter. Section 287.260, V.A.M.S., Workmen's Compensation, provides in part: "All attorney's fees for services in connection with this chapter shall be subject to regulation by the commission and shall be limited to such charges as are fair and reasonable and the commission shall have jurisdiction to hear and determine all disputes concerning the same."

Two expert witnesses expressed an opinion as to the amount of a reasonable attorney fee in this case. Appellants' witness said from $5,000 to $7,500. The other that 50 percent was fair and reasonable. Mrs. Knox testified that she was satisfied with the amount of the attorney fee. Mr. Mason, chief counsel for the widow, testified in some detail as to the extent of services performed, including the actual time devoted to preparation, trial, appeal and final distribution. Measured entirely upon a per diem or per hour basis, a fee of 50 percent or $11,635 would not be justified. However, the time consumed is not the only element to be considered. Under a contingent fee, there is no payment unless a recovery is effected. This suit was by a Missouri resident in a Kansas court. This necessitated employment of Kansas counsel and $2,500 of the total fee went to the Kansas lawyer. Here recovery was not effected by compromise nor even after a jury trial but only after successfully defending against an appeal to the Kansas Supreme Court. Twenty-five Thousand Dollars is the maximum recoverable in a Kansas death case. This recovery was for 90 percent of the maximum. We believe there was substantial evidence supporting the Commission's allowance and approval of 50 percent as a reasonable attorney fee. We shall not disturb its finding or that of the Circuit Court on this point.

■ We shall next endeavor to apply the statute, Section 287.150, subd. 3, 1955, as amended, supra, and divide the recovery. To begin with it should be noted that the third-party net recovery here ($11,635.07) is less than the amount of the compensation

award ($12,797.85). Step 1. "The employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery, including a reasonable attorney fee." The employer share is the proportion which the award ($12,797.85) bears to the total recovery ($23,896.88) or 53.56 percent. The expenses of recovery include expenses of $626.81, plus the attorney fee of $11,635 or a total of $12,261.81. The employer's proportionate share thereof is 53.56 percent or $6,567.41 and the dependent's share is 46.44 percent or $5,694.40. Step 2. After this payment "the balance of the recovery shall be apportioned * * * in the same ratio that the amount due the employer bears to the total amount recovered". Appellants say "the amount due the employer" as here used, means the amount already paid by the employer on the compensation award. We think the meaning would be clearer if the statute read the "employer's share" rather than "the amount due the employer". However, appellants' proposed method is both unreasonable and unworkable. Under their theory the employer's share in the net recovery is (as $4,597.85, amount paid, is to $23,896.88, amount of total recovery) 19.24 percent or $2,238.59, which amount, they contend, should be paid to the employer. This would leave the widow receiving $9,396.44 from the recovery, plus the $4,597.85 compensation benefits already paid to her or a total of $13,-994.29. Thus she would be in effect paying $9,902.59 of the expenses when her share is only $5,694.40, and the employer would be paying only $2,359.22, when his share is $6,567.41. Suppose under appellants' theory no compensation benefits had been paid. In that event the net recovery of $11,635.07, according to their interpretation, should be applied on the compensation award, leaving employer owing only $1,162.78 in future compensation benefits. Under this plan, out of this total recovery of $23,896.88, attorney fees and expenses would take $12,261.81, the widow would receive only the net amount of the compensation award of $12,797.85, and the employer-insurer would be out only $1,162.78. Stated differently, the employer would take all of the recovery after expenses and the widow would receive only the amount of the compensation award. The proposed method is mathematically inexact and unsound. We reject this interpretation. We rule that the employer's share in the net recovery is 53.56 percent, the same as his proportionate share in the total recovery. This amounts to $6,231.74, and is the employer's statutory proportionate net share of the recovery after payment of attorney fees and expenses.

How shall the net recovery of $11,635.07 be divided? What is the "Amount due to the Employer" (and Employee) which shall be paid forthwith? First, the widow's share in the net recovery, 46.44 percent or $5,403.36 shall be paid to her unencumbered. Second, the insured was killed on January 17, 1956; the original award entered March 13, 1956 awarded compensation in the sum of $12,000 in death benefits, payable at the rate of $35 per week, commencing as of January 17, 1956, the date of the employee's death and continuing for 342²/₇ths weeks. The recovery was effected December 3, 1957, on which date 98 installments or $3,430 was due under the award. The employer-insurer took no steps to secure a lawful division of this third-party recovery, although they knew the same had been effected and had been advised by claimant's counsel that the net recovery had been paid to the widow. Rather the employer-insurer made 10²/₇ths additional payments for a total of 108²/₇ths weeks in the total amount of $3,800 and then nearly two years later on October 29, 1959, filed with the Commission a motion to modify the original award. This motion assailed both the payment of the 50 percent attorney fee and the distribution of the net recovery as made by claimant's counsel.

If the employer-insurer had asserted their right to a division when the recovery was effected and had not passively acquiesced for almost two years in the payment

of the full amount to the widow, we think they would have been entitled to a division as of December 3, 1957, the recovery date. As of that date they were entitled to recoup from their share of the net recovery of ($6,231.74), the amount of benefits ($3,430) actually paid by them at that time, plus the $797.85 paid for funeral benefits and medical aid. The balance of their share of the recovery ($2,003.89) should thereupon have been paid to the widow and treated as advance payments (57¼ weeks) which would have paid all installments accruing up to and including January 10, 1959, making the total of benefits paid by cash or credit, $5,433.89 or 155¼ weeks, which would pay the award until January 17, 1959, at which time the employer-insurer should resume payments and continue for 187⅝ths weeks, totaling $6,555, which would pay the award in full (342⅝ths weeks).

After applying this formula, we find that the widow would receive:

$   797.87   funeral and hospital benefits.
$ 3,430.00   benefits accrued and already paid when recovery was effected.
$ 6,555.00   future payments to be made.
$ 7,407.25   cash from the net recovery.
————
$18,190.12
$ 5,694.40   add her proportionate share of expenses.
————
$23,884.52

From this computation we see that the widow would receive the amount of the recovery less her proportionate share of the expenses.

$    797.85   Funeral and medical expense
$ 3,800.00   Benefits paid.
$ 6,231.74   Employer's share award
————
$10,829.59   Total credits
$ 1,968.26   Still due on award or

The employer-insurer position would be as follows: At the time of recovery they had paid out $4,227.85 in benefits, medical and burial, but recouped this amount in full from the recovery. After taking credit for the balance of their share in the recovery ($2,003.89) they would be required to make future payments of $6,555, which, with the credits received from the third-party recovery, would completely discharge the award of $12,797.85. If we deduct from the total award their proportionate share of the expenses ($6,567.41) we get the figure of $6,230.44 (employer's share of the net recovery) and find that the employer-insurer has thus recouped the amount of the award ($12,797.85) less their proportionate share of the expenses ($6,567.41) or $6,230.44.

■ While the end result will be the same, we do not believe this identical procedure can be applied in our particular case because (1) defendants continued to pay benefits after recovery was effected and (2) defendants did not seek or ask for a division until October 29, 1959, almost two years after the recovery and thereby, we think, consented to or at least acquiesced in the payment of their share in the recovery to the plaintiff. Under such circumstances this Court and the Commission can only see to it that they receive full credit therefor on their award obligation.

In our case the employer has already paid, by cash or credit:

108 ⁴⁄₇ths weeks' compensation.
178 weeks' compensation-credit.
————
286 ⁴⁄₇ths weeks' compensation.
56 weeks' compensation.

The second and third items pay the compensation award until July 17, 1961, at which time payment of death benefits shall be resumed and continue for 56 weeks and

until the compensation award is fully satisfied.

Our procedure is at least substantially the same as that applied by the Industrial Commission. Our calculations arrive at the same totals except that in some of the computations there are slight variances in amounts. Therefore, we find the judgment of the trial court affirming the "order modifying award" entered herein on February 29, 1960, by the Commission to be correct.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.