No. 44,687

Sandra Herrington, a minor by James B. Herrington, her father, natural guardian, and next friend, *Appellant*, v. Irene M. Pechin, *Appellee*.

(424 P. 2d 624)

Opinion filed March 4, 1967.

*Otto J. Koerner*, of Wichita, argued the cause and was on the briefs for the appellant.

*Albert L. Kamas*, of Wichita, argued the cause, and *Richard A. Render*, *Ronald L. Nieto* and *Kenneth H. Hiebsch*, all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Hatcher, C.: This is an appeal from a verdict and judgment adverse to plaintiff in an action for damages for injury to a pedestrain struck by an automobile.

A careful presentation of the facts will tend to dispose of most of the issues presented here.

The collision between the automobile and the pedestrian occurred near 2320 McArthur Road in Wichita, Kansas. McArthur Road runs east and west and is twenty-two feet in width with an asphalt surface. It is the road which the Boeing Airplane Company employees take from the plant to the main thoroughfares of the city of

Wichita. The speed limit is forty miles per hour. At the point of the collision there is a large trailer court on the north side of the road and to the south are two farm houses. Between 4:30 and 5:00 o'clock P. M. the traffic going west toward Wichita travels bumper to bumper.

Sandra Herrington, the plaintiff, a girl thirteen years and ten months of age, lived with her parents in the trailer court. On November 20, 1961, at approximately 4:30 o'clock P. M. Sandra's mother gave her an egg carton, a five dollar bill and asked her to get some eggs from one of the farm houses across McArthur Road. As she approached the road she stopped because the traffic going west on the north lane was very heavy. She testified that after she had waited 5 to 10 minutes a man in an old pickup truck stopped—

"A. He waved me across like this to go on across the road and I started.

"Q. All right. Before you started did you look toward Hydraulic [west] at all?

"A. No sir.

"Q. Why didn't you?

"A. Because I depending [sic] on his vision to Hydraulic because the cars were bumper to bumper and I couldn't see over them."

She remembers starting across the road but from that time her mind was a blank until she regained consciousness some three months later.

The driver of the truck mentioned in plaintiff's testimony testified for the defendant. He and the defendant were the only eye witnesses to the impact of the collision. He testified the traffic on McArthur Road was bumper to bumper moving no faster than second gear and most of the time in low gear. We quote what he observed:

"A. Well, the best I can judge and remember I saw this little girl probably up two cars from me in the driveway, and she didn't seem like she wanted to cross, didn't pay too much attention to the traffic. She was just standing there. And then we moved up, and there was a pickup right in front of me. I don't remember, it was a late model Ford of some kind. . . .

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"A. All at once she started to cross the street in a full run. She went across in front of me. And at the same instance she went across the white line is when the Renault picked her up. I didn't know at that time, couldn't tell where she was hit or anything. . . ."

At the time the little girl started across McArthur Road he was moving in second gear. She ran close to the back end of the pickup in front of him.

On cross-examination he denied waving the plaintiff across the street. Again we quote:

"Q. Do you remember whether you motioned her across?
"A. No, not in that kind of traffic."

The defendant testified that she was driving east on McArthur Road with her two small children to pick up her husband who got off work at the Boeing plant at 5:00 o'clock P. M. The traffic on the north lane going west was very heavy—traveling bumper to bumper. The traffic on the south lane going east was very light. She further testified:

"A. Well, I was going east and I wasn't even doing 40 miles an hour and I was very cautious of this because I had recently gotten my license and I always drove within the speed limit. And as I was going—let's see, I was going east, and this girl just ran right from behind a car. I could not see her until I was right on top of her, and it seemed like she was about two or three feet in front of me, but I couldn't swear to it. She was just there.
"Q. What did you do?
"A. Well, I thought I had slammed on my brakes but apparently I hadn't. It seemed like I was just panicked and I went to put my brakes on and I didn't have time to do either that or swerve."

In her traffic accident report defendant had stated that she stopped as soon as she could.

The plaintiff produced as a witness a safety engineer whose calculations would fix the speed of defendant's automobile based on its distance from the point of impact at greater than 40 miles per hour. However, he testified he did not know whether she put the brakes on or slid a wheel and that would make a difference in his calculations. The traffic regulations of the city of Wichita fixed the speed limit on McArthur Road at 40 miles per hour.

Under the facts as above narrated the jury returned a verdict in favor of the defendant and answered special questions in which it found that the defendant was not guilty of negligence which was the proximate cause of the accident but that the plaintiff, by running across the street without due regard, was guilty of contributory negligence which was the proximate cause of the injury.

The plaintiff has appealed.

Appellant contends it was error for the trial court to give an instruction on the doctrine of sudden emergency because emergency is an affirmative defense which must be raised in the answer under K. S. A. 60-208 (c) which provides in part:

"In pleading to a preceding pleading a party shall set forth . . . any other matter constituting an avoidance or affirmative defense. . . ."

Appellant cites no cases to support her contention and a somewhat limited search on our part has failed to disclose any.

A claim of sudden emergency is but a denial of negligence and when the pleadings disclose that there was a mutual denial of negligence, the issue of sudden emergency is in the case without an affirmative allegation. Sudden emergency refutes negligence, it does not seek to avoid liability for a negligent act.

There is an additional reason why the contention is without merit. Evidence of emergency was first injected into the case by plaintiff when evidence was presented of her running through the line of cars in front of defendant's automobile. No objection was raised to defendant's further testimony on the subject. The rule on pleading affirmative defenses has been stated as follows:

"Generally a failure to plead an affirmative defense results in the waiver of that defense and it is excluded as an issue in the case. However, if evidence relating to an affirmative defense is introduced without objection and the opposite party is not surprised and has ample opportunity to meet the issue, the defense may be permitted even though it has not been pleaded. In proper cases, amendments of the pleadings to set out affirmative defenses are allowed." (Federal Practice and Procedure, Barron and Holtzoff, § 279, page 166.)

Appellant next objects to what she claims to be an instruction on unavoidable accident.

Although the trend has been to disapprove unavoidable accident instructions and this court has been increasingly critical of the practice, we do not find the instruction to be an unavoidable accident instruction such as was criticized in *Schmid v. Eslick*, 181 Kan. 997, 317 P. 2d 459; *Paph v. Tri-State Hotel Co.*, 188 Kan. 76, 360 P. 2d 1055; *Cagle Limestone Co. v. Kansas Power & Light Co.*, 190 Kan. 544, 376 P. 2d 809, and cases cited therein.

Appellant claims error because the trial court covered contributory negligence in four separate instructions.

In instruction 5 the jury was told that the burden of proof was upon the defendant to establish that the plaintiff was guilty of contributory negligence; in 6 they were advised that contributory negligence was the want of ordinary care on the part of the plaintiff; in 7 the jury was told that the plaintiff was not bound to exercise the same care as an adult would be required under the same circumstances but only to that standard of care as a child of her own age, knowledge, experience and capacity would exercise under the same or similar circumstances, and in 8 the court further instructed the jury that in considering the contributory negligence of this plaintiff,

it was her duty to exercise only the same care as a reasonably prudent minor of the same age, intelligence and experience would exercise and that her failure to do so would constitute contributory negligence as a proximate or contributing cause to her injuries.

The instructions must be considered as a whole. (*Underwood v. Missouri-Kansas-Texas Rld. Co.*, supra.) The instruction appears to be in harmony with the law of contributory negligence by a child of tender years as announced by this court in *Weber v. Wilson*, 187 Kan. 214, 356 P. 2d 659, and cases cited therein.

Although we do not find the instructions on contributory negligence improper, we are not setting them out here for future reference. More accuracy and harmony will be assured if PIK 4.01 is generally followed for definition and effect of contributory negligence, and PIK 4.03 is generally followed for an instruction as to care to be exercised by a minor to avoid contributory negligence.

We are also forced to conclude that there is no merit to appellant's contention that the jury's finding that appellee was not guilty of negligence, which was the proximate cause of the injury, was contrary to the evidence.

The jury answered "guilty" to the following question:

"Do you find the plaintiff, Sandra Herrington, guilty of negligence, as outlined in the instructions, which contributed to and was a proximate cause of her injuries?"

We find no merit in appellant's contention that the instruction on contributory negligence of a child should not have been included in the question by reference.

It might also be suggested that the special question became immaterial when the jury in answer to special question number 1 found the appellee free of any negligence which was the proximate cause of the injury.

A careful examination of the record discloses no error which would justify the granting of a new trial.

The judgment is affirmed.

APPROVED BY THE COURT.